=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 159
The People &c.,
            Appellant,
        v.
Tyrone Sweat,
            Respondent.



            Nicholas T. Texido, for appellant.
            David M. Abbatoy, for respondent.



RIVERA, J.:

        The People appeal from an order of the Erie County

Court dismissing, on double jeopardy grounds, an information

charging defendant Tyrone Sweat with two counts of Criminal

Contempt in the Second Degree (Penal Law § 215.50 [4]).  We hold

- 1 -

that where a court subjects a defendant to conditional
imprisonment in an attempt to compel defendant to testify, and
does not otherwise adjudicate defendant to be in criminal
contempt or impose punishment that is criminal in nature, double
jeopardy will not bar a subsequent prosecution for contempt under
the Penal Law.  Accordingly, we reverse.


I.

On the morning of February 23, 2012, defendant refused
to testify at the trial of his brother, Michael Sweat, in Erie
County Court.  Defendant had previously testified at a grand jury
proceeding against his brother and received transactional
immunity.  Thus, defendant could claim no Fifth Amendment
privilege against testifying at trial.  When the court asked
defendant to explain the grounds for his refusal, he replied "I
don't want to, so I don't."  The court explained transactional
immunity and informed defendant that the law required him to
testify, but defendant continued to refuse.

The court also warned defendant that if he refused to
testify the People would likely seek contempt, to which the
People stated "[w]e'll ask that [defendant] be cited for civil
contempt and confined until he agrees to testify or until the end
of the proceeding, and also we'll charge him with criminal
contempt for refusing to be sworn and testify."  The court then
inquired of defendant if he understood the consequences of his

actions and defendant indicated that he did.  The court then
cited defendant for contempt and ordered him to be taken into
custody.  Referring to the People's future actions against
defendant, the court stated that it "[m]ight be a good idea to
give [defendant] a lawyer if you're going to charge him with a
criminal charge," to which the People agreed.

Later that same day, during the court's afternoon
session, assigned counsel appeared on behalf of defendant and
advised the court that he had discussed the matter with
defendant, and that defendant still refused to testify. The court
called defendant to the courtroom, explained to defendant once
more that he had immunity and was obliged to speak, and again
asked him if he refused to do so.  Defendant reiterated that he
was unwilling to testify.  The court pressed the issue and asked
if defendant had any explanation for his refusal to testify.
Defendant stated he had nothing to say and just did not want to
testify.
The court then declared:

> "I find you're in contempt in my immediate
> view and presence for engaging in conduct
> which has obstructed and threatened to
> obstruct these proceedings and impair its
> authority -- my authority to preside over
> these proceedings and, therefore, I will
> issue a mandated commitment. And he'll be
> taken into custody. . . [D]epending on how
> long this goes and where we are from here and
> whether or not the People bring any charge of
> criminal contempt, we'll proceed further with
> this matter within the next day or so."

The court immediately inquired about the criminal charges, and the People informed the court that they intended to "file the criminal charges before the end of the trial."  The court remarked that "obviously, you don't stay in jail forever on a contempt proceeding." The court informed defendant that he was going to be confined until the proceedings were completed, when there would be a "determination at that point as to what punishment, if any, [would] be meted out . . . ." The court also advised defendant's counsel, in defendant's presence, that if defendant needed to speak with counsel, and counsel needed to communicate with the court, that counsel "should feel free to do so."

The next day, before continuing with the trial of defendant's brother, the court confirmed with counsel that defendant still refused to testify. Counsel so confirmed, and the People requested that the court produce defendant to establish his refusal on the record. Upon defendant's return to the courtroom, the court again asked defendant if anything had changed since the previous day and whether he was still refusing to testify.  After defendant confirmed he would not testify, he was taken back into custody.

That same day, Michael Sweat's trial ended in an acquittal. Upon hearing from the People that no criminal charges had been filed against defendant, the court immediately executed an order releasing defendant from custody.

Less than a month later the People charged defendant by information in Buffalo City Court with two counts of criminal contempt in the second degree (Penal Law § 215.50 [4]), stemming from his refusal to testify at his brother's trial.  As relevant to this appeal, defendant moved, inter alia, to dismiss on double jeopardy grounds.

City Court granted the motion and dismissed the charges, finding County Court's prior contempt determination to be criminal in nature as having been made during the course of a criminal trial and necessarily imposed under the Judiciary Law's criminal contempt provision.  The contempt adjudication and the charges under the Penal Law having been based on the same conduct, City Court determined the charges were therefore barred by double jeopardy.

Erie County Court, then sitting as the intermediate appellate court, affirmed.  County Court described the contempt proceedings as a "hybrid combination of both criminal and civil characteristics," but found that the proceedings were criminal in nature because the court ordered defendant's confinement, and in so doing relied on language found in the criminal contempt provisions of the Judiciary Law (see Judiciary Law § 750 [A] [1]).

A Judge of this Court granted the People leave to appeal (21 NY3d 1010 [2013]).  We now reverse.

II.

The People argue that defendant was neither tried nor prosecuted, but instead was "temporarily held in contempt" for the remedial purpose of coercing defendant to testify in court. Therefore, the court's summary contempt proceeding does not constitute punishment for double jeopardy purposes, or bar prosecution for criminal contempt under the Penal Law.

Defendant responds that the court exercised its authority under the criminal provisions of the Judiciary Law to hold him in criminal contempt. He further argues that his confinement, pursuant to the court issued mandate of commitment, constitutes punishment for obstructing the court's proceedings and impairing its authority. Therefore, the contempt is criminal in nature and his prosecution under Penal Law § 215.50 is barred by double jeopardy.

Essentially the People and defendant dispute whether the purpose for the court's contempt finding and defendant's confinement was to punish defendant for his refusal to testify at his brother's trial. While the People base their argument on the character of the contempt and its intent to compel a defendant's obedience to the law, the defendant relies on a narrow interpretation of the Judiciary Law which ignores the purpose of the contempt. Under defendant's approach, contempt is criminal in nature by the mere fact of a court's invocation of language found in the law's criminal contempt provisions, regardless of

actions by the court indicating the contempt was intended to be remedial. We reject the defendant's invitation to read the statute in a way that undermines settled constitutional principles, and agree with the People that defendant's confinement did not constitute punishment for double jeopardy purposes.

III.

This appeal illustrates the confusion attendant to the proper legal characterization of a contempt determination under our Judiciary Law. That confusion is compounded when, as in the case before us, a defendant is also prosecuted for criminal contempt under the Penal Law. The opinions of the City Court and County Court, as well as the arguments propounded by the People and defendant, illustrate the challenges faced by those seeking to bring coherence to this area of the law. The courts and the parties here struggled with whether the contempt determination was more appropriately labeled "civil" or "criminal." As we discuss below, for purposes of a double jeopardy analysis, labels are not dispositive; what matters is the "character and purpose" of the actions of the court imposing contempt. As explained by the United States Supreme Court, "[t]he test may be stated as: what does the court primarily seek to accomplish by imposing sentence?" (Shillitani v United States, 384 US 364, 370 [1966]).

We begin our discussion with a brief description of the law, specifically the relevant contempt provisions of the Judiciary and Penal Laws, and select judicial decisions, including decisions from the Supreme Court of the United States, explicating the proper approach to constitutional limitations on contempt proceedings.

A. <u>Judiciary Law Article 19</u>

Article 19 of the Judiciary Law authorizes a court to punish a person for "criminal" or "civil" contempt, and permits adjudication and sentence by way of summary proceeding. The court determines which provisions of the Judiciary Law apply and which to invoke based on the contemnor's conduct and the requirements of the statute.

Section 750, titled "Power of courts to punish for criminal contempts," limits a court's power to punish for criminal contempt a person who commits any of the specifically enumerated actions set forth in this provision "and no others." Under this section a court may hold a person in criminal contempt for "[d]isorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority" (§ 750 [1]); "[b]reach of the peace, noise, or other disturbance, directly tending to interrupt its proceedings" (§ 750 [2]); "[w]ilful disobedience to its

lawful mandate" (§ 750 [3]); "[R]esistance wilfully offered to its lawful mandate" (§ 750 [4]); "[c]ontumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory" (§ 760 [5]); "[p]ublication of a false, or grossly inaccurate report of its proceedings [except] a court cannot punish as a contempt, the publication of a true, full, and fair report of a trial, argument, decision, or other proceeding therein" (§ 750 [6]); or "[w]ilful failure to obey any mandate, process or notice issued pursuant to articles sixteen, seventeen, eighteen, eighteen-a or eighteen-b of the judiciary law . . . or subjection of an employee to discharge or penalty on account of his absence from employment by reason of jury or subpoenaed witness service . . . " (§ 750 [7]).

By way of punishment, Section 751 authorizes a fine not exceeding $1,000, incarceration not more than 30 days, or both. Where a person is committed for contempt pursuant to Section 751, the court must issue a mandate of commitment, setting forth the "particular circumstances of [the contemnor's] offense" as required under Section 752.

Section 753, titled "Power of courts to punish for civil contempts," allows a court "power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be

defeated, impaired, impeded, or prejudiced . . . " in instances
where, e.g., an individual disobeys a lawful mandate of the court
(§ 753 [1]), non-payment on a sum of money adjudged by the court
to be paid (§ 753 [3]), or where an individual refuses a court's
lawful mandate to testify (§ 753 [5]).[1]

The Judiciary Law permits a court to punish for
"criminal" or "civil" contempt in a summary proceeding (see
Judiciary Law §§ 754, 755).  Section 755 provides that "[w]here
the offense is committed in the immediate view and presence of
the court, or of the judge or referee, upon a trial or hearing,
it may be punished summarily."  Under this section, the judge or
referee must issue an order "stating the facts which constitute
the offense and which bring the case within the provisions of
this section, and plainly and specifically prescribing the
punishment to be inflicted therefor [sic]."

The Judiciary Law provides that a person held in
contempt may also be criminally prosecuted and the prior contempt
may be considered for sentencing purposes.  Thus, "[a] person,
punished as prescribed in this article, may, notwithstanding, be
indicted for the same misconduct, if it is an indictable offense;

_____

[1]Further, the Judiciary Law provides a unique remedy for
cases arising out of labor disputes. Section 753-a, applies
specifically in cases "aris[ing] out of any failure or refusal to
obey any mandate of a court contained in or incidental to an
injunction order granted by such court in any case involving or
growing out of a labor dispute" and provides that a court cannot
punish for contempt except after "a trial by jury to which the
defendant shall be entitled as a matter of right."

but the court, before which he is convicted, must, in forming its sentence, take into consideration the previous punishment" (Judiciary Law § 776).


B. Criminal Contempt Under the Penal Law

Contempt may also be a crime punishable under New York's Penal Law (see generally Penal Law §§ 215.50 [second degree], 215.51 [first degree] and 215.52 [aggravated]).[2] The language of Penal Law § 215.50, the section under which defendant was charged, closely resembles its Judiciary Law counterpart, making unlawful, inter alia, "[d]isorderly, contemptuous, or insolent behavior, committed during the sitting of a court . . . (215.50 [1]); "[i]ntentional disobedience or resistance to the lawful process or other mandate of a court" (§ 215.50 [3]); or "[c]ontumacious and unlawful refusal to be sworn as a witness in any court proceeding or, after being sworn, to answer any legal and proper interrogatory" (§ 215.50 [4]).

As with Judiciary Law section 776, the Penal Law similarly states that an adjudication of criminal contempt under the Judiciary Law serves as no bar to prosecution for criminal contempt.  Penal Law section 215.54 provides:

"Adjudication for criminal contempt under

_____

[2]Penal Law § 215.51 criminalizes, in addition to what is proscribed by § 215.50, the intentional disobedience of a court imposed order of protection by intimidation, harassment or the use or threat of violence (§ 215.51 [b] et seq.). Penal Law § 215.52 makes the repeated contemnor subject to a class D felony.

subdivision A of section seven hundred fifty of the judiciary law shall not bar a prosecution for the crime of criminal contempt under section 215.50 based upon the same conduct but, upon conviction thereunder, the court, in sentencing the defendant shall take the previous punishment into consideration"

(Penal Law § 215.54).

Thus, the Legislature has made clear its intent, as a pure statutory matter, that a person may be subject to punishment pursuant to a finding of contempt under the Judiciary Law, as well as a criminal prosecution under the Penal law.

C. Judicial Decisions

Constitutional and statutory prohibitions barring double jeopardy shield a defendant from multiple criminal punishments arising from the same offense (see US Const Amend. V ["nor shall any person be subject for the same offence to be twice put in jeopardy . . .]; NY Const art. I, § 6 ["No person shall be subject to be twice put in jeopardy for the same offense"]; see also CPL 40.20 ["A person may not be twice prosecuted for the same offense"]; People v Wood, 95 NY2d 509, 513 [2000] [imposition of multiple criminal punishments for the same offense is barred by the Double Jeopardy Clause]). Double jeopardy has a particular application to contempt matters and bars a subsequent prosecution where a prior contempt sentence serves a punitive rather than remedial purpose (see People v Colombo (405 US 9 [1972]).

The test for determining whether contempt is of the type that constitutes punishment in a constitutional sense is well articulated in Shillitani, and its companion case, Pappadio v United States.  There, defendants were each incarcerated for their respective refusals to answer certain questions before the same grand jury (Shillitani, 384 US at 365-66).  Both defendants were found guilty of criminal contempt, and each sentenced to two years imprisonment, subject to a "purge clause" that permitted defendants' release if they answered the questions before the end of the their respective sentences (id.).  The United States Supreme Court rejected defendants' claims that they were confined without the benefit of indictment or jury trial, holding that the sentences were conditional, and therefore the actions constituted civil contempt proceedings not subject to the constitutional safeguards of indictment or jury trial (id. at 372).

Essential to the court's decision was its determination that despite its obvious punitive aspects, imprisonment serves a remedial purpose "if the court conditions release upon the contemnor's willingness to testify" (id. at 370, citing Nye v United States, 313 US 33, 42-43 [1941]). For, "'[i]t is not the fact of punishment, but rather its character and purpose, that often serve to distinguish civil from criminal contempt" (id. at 369, quoting Gompers v Buck's Stove & Range Co., 221 US 418, 441 [1911]). Where a defendant is held in contempt for the remedial purpose of compelling compliance, imprisonment continues until

such time as the contemnor acquiesces or is no longer able to do so (see Shillitani, 384 US at 371). Once the contemnor agrees, there is no remedial purpose to be served by continued confinement.  The contemnor, therefore, holds "the keys of their prison in their own pockets" (id. at 368).

In contrast, where a contemnor is sentenced to imprisonment for a definite period which cannot be affected -- that is, ended -- by the contemnor's compliance with the law, then the contempt is not remedial but punitive.  As the Supreme Court has stated, "[i]f the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and [the defendant] cannot shorten the term by promising not to repeat the offense" (Gompers, 221 US at 442-43).

The court reaffirmed these principles in Hicks on Behalf of Feiock v Feiock (485 US 624, 632 [1988]).  There, defendant challenged on due process grounds his contempt adjudication and subsequent incarceration for failure to make child support payments (id. at 628).  Ultimately, the court found the record too underdeveloped and remanded (id. at 640-41). However, the court restated the legal rules applicable to determining the character of contempt and noted that "[i]f the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite

period'" (id. at 632, quoting Gompers, 221 US at 440).

Addressing a double jeopardy challenge to our Judiciary Law, the United States Supreme Court made clear that it is the nature of the contempt that matters. In Colombo, the court found defendant in contempt for his refusal to testify before a grand jury after being granted immunity. The court sentenced the defendant to 30 days imprisonment and a $250 fine. When defendant's appellate challenge proved fruitless, he offered to testify. When his offer was refused, defendant paid his fine and served his sentence. Subsequently, the People indicted the defendant under the Penal Law. Defendant unsuccessfully challenged his indictment on double jeopardy grounds, and this Court affirmed (People v Colombo, 25 NY2d 641 [1969]).

The Supreme Court reversed and concluded that the trial court's determination constituted a judgment for "criminal contempt" within the meaning of the Double Jeopardy Clause because "the petitioner was sentenced to a definite term in jail and ordered to pay a fine, and neither the prosecutor nor the trial court considered his offer to testify as sufficient to foreclose execution of the sentence" (Colombo, 405 US at 10-11). Thus, the contempt decision was not remedial but punitive, designed to inflict a sanction for past conduct rather than to compel the petitioner's testimony in the future.[3]

_____

[3]The defendant seeks to distinguish federal precedent by arguing that criminal contempt may be purged in New York, relying on People v Leone (44 NY2d 315 [1978] [per curiam]). However,

It is, thus, well settled that the character and purpose are the central inquiry in deciding whether double jeopardy bars a criminal prosecution based on actions that resulted in a previous contempt adjudication and sentence. Whether a state court labels the contempt as "criminal" or "civil" is of no moment. As the Supreme Court stated in <u>Hicks</u>, "the labels affixed either to the proceeding or to the relief imposed under state law are not controlling" (<u>Hicks</u>, 485 US at 631).

In <u>Wood</u> we applied the teaching of <u>Hicks</u>, noting that we rely on the court's purpose, not descriptive labels, when determining the nature of contempt for double jeopardy purposes (<u>Wood</u>, 95 NY2d at 513 n 3). Where such purpose is to coerce compliance rather than a definite term of imprisonment and punishment, the contempt is not punitive in nature (<u>id.</u>). Statements in our prior cases that under the Judiciary Law civil contempt is intended to be remedial, while criminal contempt is intended to punish, are not at odds with an analysis that focuses

---

the Court in <u>Leone</u> specifically left open that very question. Moreover, we do not see how this argument furthers the defendant's position. The People argue that defendant could have sought release from custody by testifying, and thus the contempt was remedial and not punishment of the type that bars his future criminal prosecution. Defendant's contention that criminal contempt may be purged in New York, thus relieving defendant of the court's contempt determination, appears to support the People's argument that the purpose of the contempt was to coerce the defendant into testifying at his brother's trial, and supports the People's case for reversal.

on the actual character and purpose of the contempt.  These cases must be understood to address the actual adjudication and imposition of contempt, apart from the labels attached to those actions (see e.g. State v Unique Ideas, Inc., 44 NY2d 345 [1978]; Dept. of Envtl. Protection of City of New York v Dept. of Envtl. Conservation of State of N.Y., 70 NY2d 233 [1987]).

## IV.

Upon the record before us, we conclude that County Court did not summarily adjudicate and impose a punitive sentence upon defendant for criminal contempt under the Judiciary Law. County Court's statements and conduct, as well as its lack of compliance with applicable sections of the law, persuade us that it did not impose punishment for criminal contempt under any statutory authority to do so.

The court's statements to defendant, his counsel and the People establish that "the character and purpose" of the contempt determination, and defendant's confinement during the course of his brother's criminal trial, was remedial. Most significantly, even after holding defendant in contempt, the court continued to inquire of defendant and his counsel whether defendant was willing to testify, indicating that defendant still had an opportunity to comply with the law.  For example, the morning immediately following the court's declaration of contempt, the court delayed the brother's criminal trial to

inquire of counsel and defendant whether defendant would testify. The only conclusion to be drawn from the court's question to defendant as to whether anything had "changed since yesterday," is that it held out the possibility that something had changed, and that defendant's confinement persuaded him to testify.  As "conditional imprisonment" is "based entirely upon the contemnor's continued defiance," the defendant held the keys to his release (see Shillitani, 384 US at 370).

For a court to summarily punish contempt, our Judiciary Law requires issuance of an order "stating the facts which constitute the offense" and "plainly and specifically prescribing the punishment to be inflicted" (Judiciary Law § 755 [emphasis added]). Notably absent from County Court's order of contempt here is a plain and specific statement of the punishment to be imposed upon defendant.  The record reveals that the court issued a mandate of commitment and that defendant was confined pursuant to that mandate; no where does the record indicate the precise term of commitment.

The uncertainty of the duration of the underlying summary contempt proceeding forecloses a finding that defendant's confinement constitutes, as a matter of law, a sentence of a definite term of imprisonment. We reject the approach taken by the intermediate appellate court that found the earlier contempt proceeding "never formally pronounced sentence," but nevertheless treated defendant's release at the end of his brother's criminal

trial as "tantamount to a sentence of time served."  That
interpretation is at odds with the language of the Judiciary Law,
which states that the order must set forth the punishment
"plainly and specifically" (Judiciary Law § 755).  To find a
punitive sentence under section 755 where none was imposed we
would also have to ignore the record, which indicates that the
judge did not order defendant's confinement as punish for
defendant's contempt.

Compliance with this statutory requirement is
indispensable and provides a reviewing court with the basis for
the finding and sentence of contempt (see e.g. Lynch v Derounian,
41 AD2d 740 [2d Dept 1973]["A written order is indispensable to a
review of a contempt citation"]; Loeber v Teresi, 256 AD2d 747,
749 [3d Dept 1998] ["The mandate that a contempt order be reduced
to writing is an indispensable requirement"]; Eaton v Eaton, 46
AD3d 1432 [4th Dept 2007] [same]). The absence of compliance with
this central requirement of section 755 supports our conclusion
that County Court did not summarily adjudicate and punitively
sentence defendant in criminal contempt under the Judiciary Law.

County Court never referred to the contempt as
"criminal," nor to the confinement as "punishment."  Quite the
opposite. Reacting to the People's indication that they would
file criminal charges before the end of the trial, County Court
stated that it would hold defendant until the criminal trial was
completed, "and then [] make a determination at that point as to

what punishment, if any, [would] be meted out . . . ."  Clearly, whether, when and how to punish was unresolved and open to the court's future determination.

V.

In cases where a court invokes its contempt power to coerce a defendant's obedience, the best practice would be for the court to state on the record that defendant may purge the contempt through compliance with the law.  However, based on the record before us, it is clear that County Court did not summarily adjudicate defendant in criminal contempt or impose a definite sentence of punishment in accordance with the Judiciary Law.  Therefore, defendant's conditional imprisonment was for the remedial purpose of compelling defendant's testimony, and as a consequence defendant's subsequent prosecution for contempt was not barred by double jeopardy.  Accordingly, the order of the Erie County Court should be reversed and the information reinstated.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed and information reinstated.  Opinion by Judge Rivera.  Chief Judge Lippman and Judges Graffeo, Read, Smith, Pigott and Abdus-Salaam concur.

Decided October 28, 2014