This opinion is uncorrected and subject to revision before publication in the New York Reports.
----------------------------------------------------------------

No. 90
Jacqueline El-Dehdan,
        Respondent,
      v.
Salim El-Dehdan, Also Known as
Sam Reed,
        Appellant.

Donna Aldea, for appellant.
Karina E. Alomar, for respondent.

RIVERA, J.:

Defendant challenges a determination of civil contempt for his failure to comply with a January 2010 order issued in the course of the parties' matrimonial proceeding. That order requires him to deposit in escrow the proceeds of the sale of

- 1 -

properties which are the subject of a prior equitable distribution determination in favor of plaintiff.

We conclude that plaintiff met her burden in support of her motion for civil contempt by establishing that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to her rights. We reject defendant's contentions that a civil contempt determination requires a finding of a contemnor's wilful violation of the underlying order, and that Supreme Court could not draw a negative inference from defendant's invocation of his Fifth Amendment right against self-incrimination at the contempt hearing.

We, therefore, conclude that the evidence adduced at the hearing established a sufficient basis for the civil contempt judgment. Accordingly, we answer in the affirmative the certified question as to whether the Appellate Division properly affirmed Supreme Court.

I.

Defendant, Salim El-Dehdan, a/k/a Sam Reed, concedes that he has not complied with an order issued in a matrimonial proceeding commenced by plaintiff Jacqueline El-Dehdan, defendant's former spouse. To address the specific issue of the propriety of the contempt order challenged in this appeal, we begin with a review of the somewhat tortuous procedural history of the parties'

matrimonial action.

A.  The Matrimonial Action for Divorce and Equitable
    Distribution

In October 2008, plaintiff commenced an action for divorce
and equitable distribution, and thereafter moved by order to show
cause for pendente lite relief seeking, in part, to restrain
defendant's transfer of any real property held jointly or
individually by the parties.  The signed order to show cause set
a hearing date on the motion, but did not include a restraint on
the transfer of defendant's property.  Soon thereafter defendant
cross moved to dismiss the matrimonial action as barred on res
judicata grounds, claiming the parties were divorced pursuant to
a Lebanese judgment, and furthermore, that plaintiff's prior New
York divorce action was dismissed with prejudice.

At an initial court appearance in January 2009, Supreme
Court indicated that another hearing would likely be necessary on
the question of the legality of the Lebanese divorce.  The record
of the hearing demonstrates that the court and the parties were
under the impression that the October 2008 order to show cause
mandated a restraint on defendant's properties, and that the
court intended to extend that restraint into the future.  Before
adjourning to permit additional submissions by the parties, the
following colloquy ensued.

> THE COURT: I get the feeling I'm going to
> need a hearing. I get the feeling you're
> going to need a lot of different people

coming in to testify. But I'm going to keep the status quo. All restraints will remain in full force and effect pending further order of this Court.

                    *          *          *

DEFENDANT'S COUNSEL: Just for Clarification, as far as restraining orders, what is being restrained?

THE COURT: All their assets.

DEFENDANT'S COUNSEL: Joint assets, your Honor?

THE COURT: Anything you have. Bank accounts, you can't close out any accounts. Any buildings, you can't sell, mortgage, can't do anything. And don't violate my order.

THE DEFENDANT: Of course. I have nothing anymore, your Honor. I have no business anymore, because I been [*sic*] recovering from the expenses that I paid for the year 2000.

THE COURT: Okay. We're going to see what expenses were paid.

Notwithstanding defendant's statements that he would comply with the court's directive and that he did not have any property that would be subject to restraint, within two weeks of this court appearance, defendant contracted to transfer one of his real properties, which he then sold the following month. Two weeks later, he contracted to sell another property. Specifically, he entered into a contract to sell 171 Ainslie Street, Brooklyn, New York, a/k/a 254/256 Leonard Street, on February 23, 2009, and then transferred this property on March 31, 2009. He also contracted to sell and transferred 60-17 60th Road, Maspeth, New York on April 6, 2009. Defendant would later

concede that he transferred the Brooklyn property for $950,000, and the Maspeth property for no consideration.

At the next hearing, held on February 4, 2009 and attended by defendant and his counsel, the court informed the parties that it was sending the legal validity of the Lebanese divorce and the equitable distribution matters to a referee for a hearing and recommended determination. The court then referenced property in defendant's control, saying, "I think there's some money out there. But right now, you want to hold on to your money, that's fine." The court continued, "[w]e are going to go for a hearing. If, in fact, you are divorced, then we will move on to the next issue of equitable distribution. If you are not divorced, we are here anyway."

Defendant failed to appear at the scheduled April 2009 date for the referee's hearing. At that time, defendant's counsel moved to be relieved from the case, and stated that she had told defendant that his appearance at the hearing was required, and that counsel would seek to be relieved. Supreme Court granted counsel's motion.

The court then held defendant in default for failure to appear, and denied, with prejudice, defendant's pending motion to dismiss plaintiff's matrimonial proceeding. The court adjourned the referee's inquest on equitable distribution, and modified the assignment to include consideration of plaintiff's grounds for divorce.

Although served with notice, defendant failed to appear at the October 2009 rescheduled referee's inquest. Nevertheless, the referee proceeded with the inquest, issued a decision granting plaintiff's motion for divorce on grounds of cruel and inhuman treatment, awarded plaintiff exclusive title to the Brooklyn and Maspeth properties and awarded title to defendant in property located in Glendale, New York, and a dry cleaning business he owned and operated.

Supreme Court subsequently denied defendant's motions to vacate the April 2009 denial of his cross motion to dismiss plaintiff's matrimonial action, as well as the referee's decision granting a divorce and equitable distribution. The Appellate Division dismissed defendant's appeal from this decision.

B.  Plaintiff's Motion for Civil Contempt and Deposit
    of the Transfer Proceeds

After plaintiff's attorney learned defendant had transferred the Brooklyn and Maspeth properties, she filed an order to show cause seeking, inter alia, that defendant be held in civil contempt for violation of the October 2008 order, and that he be required to deposit the proceeds from the transfers with plaintiff's attorney. Thereafter, in January 2010, Supreme Court signed the order to show cause, which in addition to scheduling a hearing on plaintiff's contempt motion, directed defendant to immediately deposit with plaintiff's counsel the net proceeds of the transfers, reduced by broker's fees, taxes and mortgage

payments.[1]  Defendant was personally served with this order to show cause.

As is clear from the record of the contempt hearing, the court and all the parties were under the mistaken belief that the October 2008 order to show cause prohibited the transfers. Supreme Court found defendant in contempt and ordered him incarcerated until he paid $150,000 and returned the deeds and ownership of the Brooklyn and Maspeth properties and the dry cleaning business to the marital estate.  Defendant remained incarcerated for two weeks, until defendant's new counsel discovered that the October 2008 order to show cause contained no restraint provision and brought the matter to the court's attention, whereupon the court ordered defendant's immediate release.

C.   Plaintiff's Motion for Civil and Criminal Contempt
     Based on the January 2010 Order

In August 2010, plaintiff filed a motion to hold defendant in civil and criminal contempt for his failure to deposit the

---

[1] The order also placed a restraint on the business of defendant and on the Glendale, New York property; required defendant to provide plaintiff's attorney with copies of the contract and all closing documents for the transfers of the Brooklyn and Maspeth properties; restricted defendant from accessing any bank account or other financial account or fund that might be in his name or the name of his business or an agent; ordered defendant to submit his passport to the court; and ordered that defendant would be responsible for all tax consequences of the transfers of the Brooklyn and Maspeth properties.

proceeds with plaintiff's attorney as required by the January 2010 order.  Defendant cross moved to vacate that order, arguing that it was void because it was obtained by plaintiff's fraud upon the court, namely her misrepresentations that the October 2008 order prohibited defendant's transfer of the properties. Although defendant conceded he sold the Brooklyn property, he disputed the amount of the proceeds, claiming he received $561,046.21, not $950,000 as plaintiff alleged.  He further asserted that he no longer had any of these funds.  With respect to the Maspeth property, he claimed he received no money for the transfer, never had possession of the property, and, in fact, he only took title as a favor to friends so that they could secure a new mortgage. He also claimed that the property since had been transferred back to the owners through their son.  He further contended that he did not act in wilful disobedience of a judicial mandate because no order was in place when he actually transferred the properties.

At the hearing before the referee assigned to consider the parties' motions, defendant's counsel stipulated that defendant was served with a copy of the January 2010 order in February 2010, and that defendant failed to deposit the funds in plaintiff's counsel's escrow account as required by that order. He further stipulated to submission of the recorded deed that evidenced the transfer of the Brooklyn property.

Plaintiff testified on her own behalf that she received none

of the proceeds from the transfer of the Brooklyn property and submitted into evidence proof of the transfer, including defendant's contract of sale and closing.  Plaintiff further submitted into evidence an affidavit of personal service for the January 2010 order. Plaintiff also called defendant as a witness. During his testimony he refused to answer any questions related to the proceeds from the transfer, and invoked his Fifth Amendment right against self-incrimination.  Specifically, he refused to explain what he did with the proceeds from the transfer and whether he was currently in possession of the money.

The referee found that defendant had actual knowledge of the terms of the January 2010 order, he dissipated marital assets after the commencement of the matrimonial action, namely the Brooklyn and Maspeth properties, and had not deposited the proceeds from the transfer.  The referee found specifically that less than one month after he filed his affidavit in support of his motion to dismiss plaintiff's action for divorce, defendant executed a contract of sale for the Brooklyn property for $950,000, received a $150,000 deposit for the sale, wired $516,046.21 to a bank from the sale proceeds, and that the deed was thereafter recorded.  However, the referee concluded that plaintiff failed to establish that defendant could deposit the funds after the order was issued, and therefore recommended denial of the motion for civil contempt.  The referee also recommended denial of the motion for criminal contempt, finding

that plaintiff failed to establish defendant's wilful violation of the January 2010 order.

In September 2011, Supreme Court granted plaintiff's motion to set aside the referee's report, concluding that the referee's findings were not supported by the record. After finding that all the elements of civil contempt were satisfied in this case, the court noted that the Fifth Amendment did not relieve defendant of the usual evidentiary burden in a civil proceeding, and also found that defendant's actions were wilful. Supreme Court thus found defendant in contempt of court for failing to comply with the January 2010 order, and provided that he "could purge himself of the contempt" by depositing his passport and the proceeds from the Brooklyn property transfer within 20 days of the contempt order. Failure to do so would result in his incarceration.

The Appellate Division unanimously affirmed, treating Supreme Court's decision as, in effect, granting only plaintiff's motion for civil contempt because the court did not impose a definite jail term without opportunity to purge the contempt (114 AD3d 4 [2d Dept 2013]). In a comprehensive and insightful opinion, the Appellate Division broadly addressed and clarified the burdens of proof where the contemnor invokes the Fifth Amendment privilege against self-incrimination, as well as what the court considered to be inconsistencies in the case law regarding the elements of civil contempt. The Appellate Division

granted defendant leave to appeal, and certified the question whether its opinion and order was properly made. (2d Dept, May 14, 2014, index No. 56786/08.)

II.

Defendant challenges the Appellate Division's decision on three grounds:  plaintiff failed to establish the necessary elements of civil contempt, including defendant's wilful violation of a lawful court order;[2] he was denied the opportunity to collaterally attack the January 2010 order; and in the context of a hearing on a joint civil and criminal contempt motion, Supreme Court may not draw a negative inference from defendant's invocation of his Fifth Amendment right to remain silent.  We are unpersuaded by these arguments, and address each of them in turn.

A.   Evidence of Defendant's Civil Contempt

1.   Elements of Civil Contempt and Plaintiff's Burden of Proof

Under Judiciary Law § 753, "[a] court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding,

---

[2] Defendant does not challenge the Appellate Division's determination that Supreme Court granted only the civil contempt branch of plaintiff's motion, and requests specifically that we reverse and vacate the civil contempt judgment.  Our review is therefore limited to the matter as briefed by defendant.

pending in the court may be defeated, impaired, impeded, or prejudiced" (Judiciary Law § 753 [A]; see generally People v Sweat, 24 NY3d 348, 353-354 [2104] [discussing Judiciary Law Section 753]).  In Matter of McCormick v Axelrod (59 NY2d 574 [1983]), this Court described the elements necessary to support a finding of civil contempt.  First, "it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect" (id. at 583).  Second, "[i]t must appear, with reasonable certainty, that the order has been disobeyed" (id.).  Third, "the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party"  (id.).  Fourth, "prejudice to the right of a party to the litigation must be demonstrated" (id.; see Karg v Kern, 125 AD3d 527, 528-529 [1st Dept 2015] [contempt requires a showing of a violation of a clear and unequivocal court mandate and that the movant was thereby prejudiced]; Matter of Vernon D., 119 AD3d 784, 784 [2d Dept 2014] [civil contempt was properly found where the contemnor did not obey a clear and unequivocal order]; N. Tonawanda First ex rel. Kern v City of N. Tonawanda, 94 AD3d 1537, 1538 [4th Dept 2012] [order violated must be an unequivocal mandate]; Conners v Pallozzi, 241 AD2d 719, 719 [3d Dept 1997] [evidence proving with a reasonable certainty that a prior court order has been violated will support a finding of civil contempt]; N.A. Dev. Co. Ltd. v Jones, 99 AD2d 238, 242 [1st Dept 1984] [movant must establish a

reasonable certainty]; <u>Power Auth of State of NY v Moeller</u>, 57 AD2d 380, 382 [3d Dept 1977] [personal service is not necessary if the party has actual knowledge of the order], <u>lv denied</u> 42 NY2d 806 [1977]).

In order to carry her burden, plaintiff had to establish by clear and convincing evidence defendant's violation of the January 2010 order (<u>Town of Southampton v R.K.B. Realty, LLC</u>, 91 AD3d 628, 629 [2d Dept 2012]) [the movant bears the burden of establishing contempt with clear and convincing evidence]; <u>Tener v Cremer</u>, 89 AD3d 75, 78 [1st Dept 2011] [same]; <u>Town of Copake v 13 Lackawanna Properties, LLC</u>, 73 AD3d 1308, 1309 [3d Dept 2010] [civil contempt requires clear and convincing evidence], <u>lv denied</u> 20 NY3d 857 [2013];  <u>Dietrich v Michii</u>, 57 AD3d 1527 [4th Dept 2008] [same]; <u>Raphael v Raphael</u>, 20 AD3d 463, 463-464 [2d Dept 2005] [same]; <u>Graham v Graham</u>, 152 AD2d 653, 654-655 [2d Dept 1989] [same]).


2.  <u>Plaintiff's Evidence</u>

Here, there is no genuine dispute that plaintiff established, by clear and convincing evidence, defendant's requisite knowledge of the order and noncompliance.  Defendant's counsel stipulated at the contempt hearing before the referee that defendant was previously served with the January 2010 order, and also admitted that defendant had not complied. Indeed, now five years after the order was signed and issued defendant has

yet to comply.

Plaintiff also easily established that defendant's failure to deposit the proceeds was prejudicial to her interests. Defendant's conduct denied plaintiff equitable distribution in accordance with the 2009 determination awarding her title to the Brooklyn and Maspeth properties.

The real dispute between the parties centers on whether "a lawful order of the court, clearly expressing an unequivocal mandate, was in effect" (McCormick, 59 NY2d at 583). We conclude that the January 2010 order constitutes the lawful order which defendant failed to comply with, and defendant's efforts to distract our analysis from that central and obvious conclusion are without legal or record factual support.

The signed January 2010 order explicitly states that the defendant

> "shall deposit immediately with the Plaintiff's attorney the sum of nine hundred fifty thousand ($950,000.00) dollars which is the sum of money he purportedly received from the transfer of [the property] 171 Ainslie Street, Brooklyn, New York and 64-17 60th Road, Maspeth, New York, minus the money paid for [the] real estate broker, transfer taxes and payment of the underlying mortgage."

This unambiguous directive, describing the property and the exact amount of the proceeds, and directing defendant to immediately deposit those funds with counsel, left no doubt as to its requirements and time frame, and, therefore, constitutes "a lawful order of the court, clearly expressing an unequivocal

mandate, [that] was in effect" (McCormick, 59 NY2d at 583).

Nevertheless, defendant claims that the January 2010 order is not lawful. According to defendant, the order is a nullity because it was procured based on plaintiff's attorney's misrepresentations, and in violation of his due process rights to notice and a hearing. In essence what defendant seeks to do is excise from the January 2010 order its mandatory language that he deposit the proceeds of the transfer. However, the fact that the January 2010 order contains plaintiff's request for contempt does not negate the order's clear directive that defendant deposit the proceeds. That portion of the order did not seek to penalize defendant but rather to preserve funds for plaintiff's benefit. As the referee's report on the contempt motion explained, part of the intent of the January 2010 order was "to preserve funds to protect the plaintiff's rights to equitable distribution as decided by the undersigned in the decision issued" in December 2009.

We further note that defendant's description of plaintiff's request for relief undermines his current argument that the January 2010 order sought only to address a violation of a (nonexistent) restraint provision in the October 2008 order. In his brief to this Court, defendant declares that plaintiff's order to show cause "sought multiple layers of relief--including (A) contempt, and (B) an immediate deposit of money," leading Supreme Court to "address[] only the first issue--namely, whether

Mr. Reed should be held in contempt.  It never addressed the separate and immediate order for Mr. Reed to convey money to Plaintiff's attorney."  Thus, defendant, in actuality, recognizes that the provisions of the January 2010 order reflect different, compartmentalized directives.

With respect to defendant's due process argument, the record does not support defendant's claim that he was denied notice and a hearing.  To the contrary, the record establishes that he received notice of the hearing as he was personally served with the January 2010 order.  Furthermore, his arguments in opposition to the motion for contempt, and in support of his cross motion to vacate the January 2010 order, were fully submitted and considered by Supreme Court prior to issuance of its civil contempt order.

To the extent defendant complains that the January 2010 order is invalid because it was issued ex parte, the law is clear that a court is authorized to issue an order to preserve marital property, both in advance of, and upon, a determination of equitable distribution.  In accordance with Domestic Relations Law § 234, in an action for divorce the court may "(1) determine any question as to the title to property arising between the parties, and (2) make such direction, between the parties, concerning the possession of property, as in the court's discretion justice requires having regard to the circumstances of the case and of the respective parties" (see also CPLR § 2214 [d]

[a "court in a proper case may grant an order to show cause, to be served in lieu of a notice of motion"]; CPLR § 6313 [a] [allowing for a temporary restraining order]; 22 NYCRR 202.7 [f] [permitting the court to grant temporary injunctive relief upon an affirmation demonstrating significant prejudice to the party seeking the restraining order if prior notice is given to the adverse party]). Therefore, the January 2010 order to deposit the proceeds from the transfer was well within the court's authority (see e.g. Nederlander v Nederlander, 102 AD3d 416 [1st Dept 2013] ["in order to protect (the) expectancy (of spouses in marital property) pending equitable distribution, to maintain the status quo, and to prevent the dissipation of marital property, the court must be able to issue orders to ensure that such marital property is protected should it later become the subject of equitable distribution"]; Maillard v Maillard, 211 AD2d 963, 964 [3d Dept 1995] ["Domestic Relations Law § 234 allows courts to issue preliminary injunctions aimed at the preservation of marital assets pending equitable distribution. . . . Proper cause may be shown to exist by the admission . . . that there was a conversion and/or dissipation of marital assets"] [internal citations omitted]; Nebot v Nebot, 139 AD2d 635 [2d Dept 1988] [as defendant's only claim to a property purchased with the separate funds of the plaintiff was to any part of the appreciation she might have contributed to, it was appropriate for the court to require that half of the proceeds of the sale be

placed in escrow while the determination was pending]; Palitz v
Palitz, 111 AD2d 119 [1st Dept 1985] [court found it appropriate
to deposit half the assets of a dissolved corporation in an
escrow account while the determination was made as to whether the
corporation was marital property, and to allow for "other prudent
investments yielding substantially greater returns"]; Monroe v
Monroe, 108 AD2d 793, 794 [2d Dept 1985] [Domestic Relations Law
§ 234 allows courts to issue preliminary injunctions outside of
the requirements of CPLR article 63]; Leibowits v Leibowits, 93
AD2d 535, 535-536 [2d Dept 1983] ["Section 234 of the Domestic
Relations Law provides the authority for the issuance of an order
restraining disposition of marital assets during the pendency of
a divorce action. Therefore, compliance with the formalities and
jurisprudential requirements of article 63 of the CPLR relative
to preliminary injunctions is not a prerequisite to an order of
restraint"]; Perry v Perry, 79 AD2d 851 [4th Dept 1980] ["[i]n an
action for divorce the court may determine any question as to the
title to property arising between the parties"]; Weinstock v
Weinstock, 8 Misc 3d 221, 223 [Sup Ct 2005] ["Section 234 of the
Domestic Relations Law specifically empowers the court to
determine any question as to the title or possession of property
as between the parties in a matrimonial action . . . . This power
. . . necessarily includes the power to prevent a party from

frustrating such delivery by improper disposition of assets"]).[3]

Defendant is also foreclosed from arguing to this Court that the equitable distribution determination itself is invalid. Having previously unsuccessfully challenged that decision, defendant should not be given a "second bite at the apple" in this appeal from the civil contempt judgment. Moreover, inasmuch as the court awarded plaintiff the Brooklyn and Maspeth properties in its equitable distribution determination the propriety of which is not at issue on this appeal it was perfectly lawful for the court to require defendant to deposit the proceeds of his transfer of those properties with plaintiff's counsel, regardless of whether the initial transfer of the properties violated any court order.

---

[3] In 2009, the New York legislature amended the Domestic Relations Law to provide upon commencement of a divorce action for automatic orders restraining the parties from transferring or disposing of marital assets, without written consent of the other party or consent of the court (Domestic Relations Law § 236 [B] [2] [b]).  As described in a letter from the Chair of the Assembly Judiciary Committee to the Governor, the automatic orders were intended to address the hardship to one spouse caused by unilateral dissipation of marital assets upon commencement of divorce proceedings.

> "Having standardized orders automatically in effect from the commencement of a case would ensure timely prevention of dissipation of assets and would eliminate the expense and delays involved in making applications for temporary restraining orders.  It is not uncommon for parties to dissipate assets as soon as divorce papers are served. This results in extreme hardship to one party in the divorce action"

(New York Bill Jacket, 2009 A.B. 2574, Ch. 72.)

3. Wilfulness is Not a Required Element of Civil
   Contempt

Defendant argues that Supreme Court's finding of contempt is not supported by the record because the evidence failed to establish that he wilfully disobeyed the January 2010 order. According to defendant our case law establishes that wilful conduct is a necessary element of both civil and criminal contempt, and that what distinguishes the two is merely the level of a contemnor's wilfulness. Defendant's arguments are contradicted by statute as well as our prior holdings (McCormick, 59 NY2d at 583).

Turning to the relevant statutory provision, nowhere in Judiciary Law § 753 [A] [3] is wilfulness explicitly set forth as an element of civil contempt (Judiciary Law § 753 [A] [3]; see also McCain v Dinkins, 84 NY2d 216, 226 [1994]). Indeed the only mention of wilfulness for civil contempt is in § 753 [A] [1], which is not at issue in this case as it applies only to "[a]n attorney, counsellor, clerk, sheriff, coroner," or someone otherwise selected or appointed for judicial or ministerial service. In contrast, Judiciary Law § 750, the criminal contempt provision, permits a court to impose punishment for criminal contempt only for "wilful disobedience to its lawful mandate" (Judiciary Law § 750 [A] [3]; see also Sweat, 24 NY3d at 353-354). This statutory language makes clear that where the legislature intended to require wilfulness, it knew how to do so, and any omission of such element is intentional (Statutes Law

§ 74 [McKinney]; <u>Pajak v Pajak</u>, 56 NY2d 394, 397 [1982] ["[t]he failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended"]).  We are, of course, not at liberty to read into the statute what is not mandated by the Legislature (Statutes Law § 94 [McKinney];  <u>Lederer v Wise Shoe Co.</u>, 276 NY 459, 465 [1938] ["[w]e do not by implication read into a clause of a rule or statute a limitation for which we find no sound reason and which would render the clause futile"]).

Apart from the statute, this Court has not imposed a wilfulness requirement for civil contempt (<u>McCain</u>,84 NY2d; <u>McCormick</u>, 59 NY2d).  Nevertheless, defendant relies on <u>McCormick</u> and <u>McCain v Dinkins</u>, to persuade us that, absent a finding of wilfulness, civil contempt cannot be imposed.  However, those cases stands for the opposite proposition.

In <u>McCormick</u> this Court explained that civil contempt seeks "the vindication of a private right of a party to litigation and any penalty imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with that right" (<u>McCormick</u>, 59 NY2d at 583, citing <u>State of New York v Unique Ideas</u>, 44 NY2d 345 [1978]).  Whereas, criminal contempt "involves vindication of an offense against public justice and is utilized to protect the dignity of the judicial system and to compel respect for its mandates" (<u>id.</u>, citing <u>King v. Barnes</u>, 113 NY 476 [1889]).  This Court then stated that "the element which

serves to elevate a contempt from civil to criminal is the level of willfulness with which the conduct is carried out" (id.).

Defendant argues the Court must have meant that both forms of contempt require wilfulness, just in varying degrees. We reject this interpretation because it depends on reading the language in isolation, rather than as an integral part of the Court's entire analysis. Read in context, it is clear that the language does not mean that wilfulness is required. Indeed, the Court's analysis is devoid of any mention or application of wilfulness as a necessary element of civil contempt. Instead, the Court granted the motion for civil contempt, despite its conclusion that there was no evidence of wilfulness to support a finding of criminal contempt.

The meaning to be attached to the Court's "level of wilfulness" language is that the contemnor's action must connote an intentionality not otherwise indicative of wrongfulness (McCormick, 59 NY2d at 583). In other words, the contemnor must have a consciousness that reflects an awareness of the act that is other than "unwitting conduct" (Bryan v United States, 524 US 184, 191 [1998]. See also Black's Law Dictionary 1630 [8th ed 2004] [defining willfulness as "[v]oluntary and intentional"]).

This Court again upheld a finding of civil contempt without requiring willfulness in McCain (84 NY2d at 226-227). In that case, the Court cited to McCormick's distinction between criminal and civil contempt as based on "the level of willfulness associated

with the conduct" and, just as in McCormick, engaged in a civil contempt analysis without reference to wilfulness as a necessary element (id. at 226). As these cases establish, wilfulness is not an element of civil contempt. We, therefore, agree with the Appellate Division that civil contempt is established, regardless of the contemnor's motive, when disobedience of the court's order "defeats, impairs, impedes, or prejudices the rights or remedies of a party" (El-Dehdan, 114 AD3d at 17 [internal citations omitted]).

### 4. Defendant's Response

Once plaintiff met her burden and established that defendant violated the order to deposit the proceeds from the transfer, it was incumbent upon defendant to proffer evidence of his inability to pay. Defendant's argument to the contrary is unpersuasive because, as the contemnor, he is the party who is charged with violating the court's order, and also the party with access to the relevant financial information regarding his ability to pay.

Nonetheless, defendant failed to submit evidence that he could not pay due to a lack of sufficient funds, economic distress or financial hardship, or some other obstacle to his compliance with the January 2010 order to deposit the proceeds. Instead, he submitted an affidavit containing bald face statements that by January 29, 2010, he "was no longer in possession of the proceeds of the March, 2009 sale," that he received less from the sale of the Brooklyn property than

evidenced by the transfer documents, and that he received nothing from the transfer of the Maspeth property as he was merely holding it in his name for friends.  Such "[v]ague and conclusory allegations of . . . inability to pay or perform are not acceptable" (Matter of Storm, 28 AD2d 290, 294 [1st Dept 1967]). Rather, courts have required a more specific showing of the contemnor's economic status (see e.g. Yeager v Yeager, 38 AD3d 534, 534-535 [2d Dept 2007] [plaintiff husband met his burden of showing his inability to comply with the judgment by establishing he had no additional source of funds after accounting for payments made in accordance with the pendente lite order and his reasonable needs, and where his investment account was frozen pursuant to court order]; Ovsanikow v Ovsanikow, 224 AD2d 786, 787 [3d Dept 1996] [an undocumented assertion of the inability to pay without any evidentiary support, will not suffice to provide the defense of a financial inability to pay]; Bowie v Bowie, 182 AD2d 1049, 1051 [3d Dept 1992] [contemnor failed to establish inability to pay where papers consisted of a brief two-page affidavit wherein he summarily denied the arrearages and asserted financial inability to pay, but lacked current documentation supporting his claims]; Lake v Schuner, 106 AD2d 893, 894 [4th Dept 1984] [record established that plaintiff was impoverished and therefore unable to comply with his support order]; and compare Kainth v Kainth, 36 AD3d 915, 916 [2d Dept 2007] ["[t]he evidence adduced at the hearing established that the father's

income for the 12 months preceding the hearing was insufficient to permit payments in accordance with the order of support. Further, the father's loss of higher paying employment was not self-imposed, and the record contains evidence of his active, but unsuccessful, pursuit of similar employment"], lv dismissed 8 NY3d 1003 [2007]).

### B.    Collateral Attack on the January 2010 Order

Defendant's argument that he was entitled to collaterally challenge the January 2010 order in the contempt proceeding is simply another version of his claim that the October 2008 order did not prohibit his transfer of the properties.  Defendant, however, ignores the fact that the October 2008 order is not the subject of the civil contempt order, and, consequently, the contents of the October order are not material to the issues before us.

Instead, the contempt order defendant challenges on this appeal is based on his failure to comply with the January 2010 order, which required that he deposit with the plaintiff's attorney the proceeds from the transfer.  Whether his transfer of the property initially violated any order of the court is beside the point.  Moreover, as we have already discussed, the court was well within its authority to issue the January 2010 order.

### C.    Defendant's Invocation of the Fifth Amendment

Defendant contends that Supreme Court improperly drew a negative inference from his invocation of his Fifth Amendment right against self-incrimination during the contempt hearing.  He maintains that by holding one hearing on plaintiff's joint motion for civil and criminal contempt he was forced to choose between protecting himself against civil liability by testifying as to his lack of funds, and exercising his rights under the Fifth Amendment to remain silent so as to avoid criminal contempt.  We find his argument unpersuasive and conclude that under the circumstances of this case, where defendant failed to take steps to avoid the alleged dilemma complained of here, Supreme Court acted within its authority to draw a negative inference, and in so doing did not violate defendant's constitutional rights.

The Fifth Amendment of the United States Constitution provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself."  However, the right against self incrimination does not automatically insulate a party to a civil action from potential liability.  Both the United States Supreme Court, in Baxter v Palmigiano (425 US 308, 318 [1976]), and this Court, in Marine Midland Bank v Russo Produce (50 NY2d 31, 42 [1980]), have held that a negative inference may be drawn in the civil context when a party invokes the right against self incrimination.  Here, defendant could invoke the privilege, but that did not relieve him of his burden to present adequate evidence of his financial inability to comply

with the January 2010 order so as to avoid civil contempt liability (US v Rylander, 460 US 752, 758 [1983] [invocation of Fifth Amendment does not "substitute for evidence that would assist in meeting a burden of production"]; Access Capital Inc. v DeCicco, 302 AD2d 48, 51 [1st Dept 2002] ["[w]hile a party may not be compelled to answer questions that might adversely affect his criminal interest, the privilege does not relieve the party of the usual evidentiary burden attendant upon a civil proceeding; nor does it afford any protection against the consequences of failing to submit competent evidence"]).  As we have explained, defendant relied on his conclusory statements that he no longer has the proceeds of the transfers and that he has no funds to deposit with the respondent's attorney.  He cannot seek to avoid the consequences of this failure to proffer sufficient evidence by invoking his Fifth Amendment right.

We might view this case differently if defendant had sought relief from Supreme Court to avoid the prejudice he now claims was the result of a joint civil and criminal contempt hearing. If defendant was concerned about the spill-over effect of invoking his Fifth Amendment right, he could have sought to bifurcate the hearing so that the court would first consider plaintiff's criminal contempt allegations (CPLR § 2201; Britt v Intl. Bus Services, Inc., 255 AD2d 143, 144 [1st Dept 1998]).  He chose not to do so.  Instead, he seeks reversal of the contempt determination, or, in the alternative, that we grant a new

hearing solely on civil liability.  The latter is essentially a request for the very remedy he could have sought from Supreme Court if he had filed a request to bifurcate.  Thus, because he failed to seek this relief before Supreme Court, in the first instance, he cannot complain that Supreme Court erred in drawing negative inferences specifically allowed by law.

We are especially reticent in the context of matrimonial proceedings to issue a decision that may, unintentionally, undermine legislative efforts to protect parties from unauthorized unilateral dissipation of marital assets.  To permit defendant to avoid contempt by refusing to answer, even though he failed to request that the court hold the civil contempt branch of plaintiff's motion in abeyance pending the outcome of the criminal contempt branch, would incentivize defendant, and those similarly situated, to refrain from seeking relief initially before the contempt court, and later argue on appeal that the proceeding was constitutionally infirm.  We decline to sanction this conduct where doing so will result in prejudice to those, like plaintiff, who have established the existence of conduct evincing civil contempt, and will thereby further delay and obstruct plaintiff's efforts to secure any remaining marital assets she may be entitled to under the prior equitable distribution determination.

### III.

Accordingly, the Appellate Division order should be

affirmed, with costs, and the certified question answered in the affirmative.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs, and certified question answered in the affirmative.  Opinion by Judge Rivera.  Chief Judge Lippman and Judges Pigott, Abdus-Salaam, Stein and Fahey concur.

Decided October 20, 2015