OPINION OF THE COURT
Frank A. Sedita, III, J.
All of these cases present a common question for the court, namely, whether a warrant of arrest should issue for someone who owes a private debt.
Second only to life itself, liberty is the most cherished right of every American citizen. The crown’s deprivation of that inalienable right was cited as one of the reasons for declaring our independence from Great Britain. The moral duty to grant liberty to those who continued to be deprived of it became the principal basis for the American Civil War.
Deprivation of one’s liberty for nonpayment of a debt was a normal feature of American commercial life from the colonial era into the beginning of the nineteenth century. Imprisonment for indebtedness was commonplace with at least two signatories of the Declaration of Independence—James Wilson, an Associate Justice of the Supreme Court, and Robert Morris, a close friend of George Washington’s—spending time in jail after neglecting loans.
Debtors’ prisons were banned under federal law in 1833. Shamefully but tellingly, laws that permitted the deprivation of one’s liberty over a private debt were abolished more than three decades before the abolition of slavery.
Today, one can only be lawfully deprived of his liberty under limited and well-defined circumstances. Most commonly, the arrest of someone suspected of committing a crime—whether pursuant to a warrant or based upon the judgment of a police officer trained to make such decisions—must be supported by probable cause. Even in that event, the accused is entitled to a panoply of due process rights, including prompt arraignment, representation by counsel (and court appointment of the same for the indigent) and the setting of reasonable bail.
Our legal system’s substantive laws and procedures for the adjudication of non-criminal transgressions—whether for a *287 breach of a duty of care in a negligence action or a consumer debt in a breach of contract action, for example—are often vastly different from those for the adjudication of criminal offenses. There are some circumstances, albeit extremely limited ones, when the deprivation of a citizen’s liberty is permissible in the course of civil litigation. A finding of contempt is the most common example.
Criminal contempt and civil contempt are often confused. Criminal contempt is an offense against public justice, designed to vindicate and uphold the power of the court. The penalty for criminal contempt is therefore punitive. Civil contempt, by contrast, is for the violation of a private right. The penalty imposed for it is designed to compensate or otherwise further the right of the party in whose favor a judicial direction was made (see Siegel, NY Prac § 482 at 838 [5th ed 2011]).
Generally, Judiciary Law § 753 authorizes the court to punish a party for civil contempt. The party seeking a civil contempt finding must prove, by clear and convincing evidence, that a lawful judicial order expressing an unequivocal mandate was in effect; that the alleged contemnor had knowledge of the order; that he disobeyed the order; and, that the rights of the moving party have been prejudiced (see El-Dehdan v El-Dehdan, 26 NY3d 19, 29 [2015]; Matter of Andrew B., 128 AD3d 1513, 1514-1515 [2015]).
With respect to actions that seek enforcement of money judgments, CPLR 5251 makes a person’s “[r]efusal or willful neglect” to obey a subpoena punishable as a civil contempt. CPLR 5224 describes and sets forth the procedures for issuing subpoenas utilized in enforcement actions, including information subpoenas, which typically require a judgment debtor to answer questions from a lengthy questionnaire.
Pursuant to CPLR 5224 (3) (iv), failure to comply with an information subpoena is governed by CPLR 2308. Pursuant to CPLR 2308 (a), failure to comply with a subpoena is punishable as a contempt. Pursuant to CPLR 2308 (b), the court “may” issue a warrant (i.e., warrant issuance lies within the court’s discretion) directing the sheriff to bring the alleged contemnor before the court.
Plaintiffs’ counsel contends all of the defendants are in contempt for failing to comply with information subpoenas and seeks an order of this court commanding the sheriff of any county in the State of New York to arrest each of them. The requested relief stems from the following dispositions:
*288 • On October 23, 2007, a default judgment was entered in favor of plaintiff Southern Chautauqua County Federal Credit Union, and against defendants Brian Moore and Wayne Moore, in the amount of $37,244.84.
• On April 13, 2012, a default judgment was entered in favor of plaintiff Jamestown Area Community Credit Union, and against defendant John Devine, in the amount of $6,706.26.
• On March 21, 2012, a default judgment was entered in favor of Inner Lakes Federal Credit Union, and against Ralph Kochanowski, in the amount of $11,249.66.
• On March 23, 2012, a default judgment was entered in favor of Westfield Area Credit Union, and against William Hepfner, in the amount of $2,630.60.
• On October 11, 2013, a default judgment was entered in favor of Southern Chautauqua County Federal Credit Union, and against Amber Harrison, also known as Amber Zrimsek, and Anthony Zrimsek, in the amount of $6,096.38.
• On June 5, 2014, a default judgment was entered in favor of Greater Chautauqua Federal Credit Union, and against Hector Quiles, in the amount of $3,743.02.
In May of 2015, plaintiffs requested the court to issue information subpoenas with respect to the foregoing judgments. On June 15, 2015, Chautauqua County Supreme Court Justice Paul B. Wojtaszek granted an order directing defendants to comply with plaintiffs’ information subpoenas and provide written answers to 44 questions contained in a questionnaire submitted by plaintiffs’ counsel. The order and questionnaire were sent to defendants’ last known addresses, via first-class mail, on July 27, 2015.
None of the defendants apparently responded. On February 2, 2016, notices of motions, seeking arrest warrants, were filed with the court. Plaintiffs’ counsel then sent the notices of motions to defendants’ last known addresses, via first-class mail, on February 19, 2016.
Other than affidavits of mailing, the court was provided with no other information regarding whether other steps were taken to assure the defendants actually lived at their last known addresses (some of which come back to farm houses and so-called *289 trailer parks), let alone actually received and read the information subpoena, questionnaire and/or notices of motion. Accordingly, the court’s principal law clerk contacted plaintiffs’ counsel and invited him to submit additional evidence in this regard.
Another attorney from plaintiffs’ law firm responded by submitting several identical form letters, claiming “periodic review of credit reports and Westlaw Public searches” were performed to confirm the defendants’ addresses. However, no actual proof—whether in the form of affidavits of those who observed any of the defendants receive any of the documents at issue or from those who may have spoken to the defendants about the same, for example—were provided to the court. In other words, although there is sufficient proof to support the claim that legal documents were mailed to defendants’ last known addresses, there is no proof that any of the defendants actually received and read the information subpoena, the questionnaire, the notices of motion or any contempt warnings.
Plaintiffs’ motions were argued on September 12, 2016. After plaintiffs’ counsel completed his argument (or so it seemed), the court began to set forth its concerns. Counsel then interrupted, stating: “Your Honor is wrong.” Despite being reminded that the court had not finished its remarks, counsel continued:
“Your Honor, if I continue to talk over you, what are you going to do to me? Are you g[o]ing to throw me in jail at some point? And why are you throwing me in jail? Not because I didn’t—not because I didn’t pay a debt. Because I’ve defied the court.”
Counsel continued on and once finished was asked: “Are you done interrupting me now?” Counsel responded: “I made my point.” The court then denied plaintiffs’ motions. Counsel asked: “Are you going to issue a decision so I can appeal that?” After being advised that the court would do so, counsel turned his back to the bench and stated, “unbelievable.”
Counsel’s petulance impressed the court as a more fitting illustration of criminal rather than civil contempt. In either event and as previously noted, a party seeking a civil contempt finding must prove four elements, including that the alleged contemnor had knowledge of the order and its contents. Plaintiffs must also do so by clear and convincing evidence. Mailing alone is insufficient to prove the required element of knowledge by clear and convincing evidence and plaintiffs fail to meet their burden in the absence of additional proof that the *290 information subpoena was signed for by the named defendant or actually received by the named defendant (see Dashiff v Grant, 15 Misc 3d 1102[A], 2007 NY Slip Op 50455[U] [Nassau Dist Ct 2007]; Jack Mailman & Leonard Flag DDS, P.C. v Belvecchio, 195 Misc 2d 275 [2002]). In short, mailing it in does not satisfy plaintiffs’ burden of proof.
The court recognizes the irritation caused by those who ignore the amiable overtures of debt collection firms. However, if the court is not in session when or soon after the arrest is made (a plausible occurrence in Chautauqua County) the debtor will have to languish in a jail cell until the court is in session and the matter can be heard. This would be tantamount to transforming the Chautauqua County jail into a debtors’ prison. Regardless of the length of the debtor’s detention, he would still be taken into police custody and deprived of his liberty. Before sanctioning an enterprise better suited for the Sheriff of Nottingham than the Sheriff of Chautauqua, the court must be assured the debtor/defendant is being knowingly contemptuous. The court is not.
In the absence of producing clear and convincing evidence that defendants actually received the information subpoenas and have knowingly ignored them, the court, in a cautious exercise of its discretion, denies the relief requested by plaintiffs. Should plaintiffs submit further proof satisfying the knowledge element and/or propose a form of relief less draconian than a blanket arrest warrant, the court will consider revisiting its decision.