■ In the Matter of AUDRY BICKWID, Respondent, v STEVEN H. DEUTSCH, Appellant. [645 NYS2d 539] —In a support proceeding pursuant to Family Court Act article 4, the appeal is from an order of the Family Court, Suffolk County (Freundlich, J.), entered May 28, 1993, which directed that the appellant be imprisoned for 48 days. By decision and order dated December 19, 1994, this Court dismissed the appeal as academic (*see, Matter of Bickwid v Deutsch,* 210 AD2d 400). By opinion and order dated December 21, 1995, the Court of Appeals reversed the decision and order of this Court, and remitted the matter to this Court for consideration of the appeal on the merits (*Matter of Bickwid v Deutsch,* 87 NY2d 862).

Ordered that the order is affirmed, with costs.

Pursuant to the 1985 judgment entered in the parties' divorce action, the father was obligated to pay $250 a week in child support for their four children, or $62.50 a week per child. In 1989, the father petitioned for a downward modification based on their oldest daughter's emancipation and because the father then had custody of the parties' oldest son Craig. The mother petitioned for an increase in support. Following a

hearing which was held over a period of almost one year, the Hearing Examiner issued an order, dated February 28, 1991, which obligated the father to pay child support of $400 a week for the two children, Melissa and Daniel, who remained in the mother's custody, retroactive to July 21, 1989. Beginning on January 20, 1991, Melissa's 21st birthday, the father was required to pay child support of $300 a week for Daniel. The Hearing Examiner concluded that the testimony of the father, a self-employed certified public accountant, regarding his finances was not credible and imputed income to him of $150,000 a year. Since the order was made retroactive to the date the petition was filed, substantial arrears had accumulated. In an order dated August 27, 1991, the Family Court, Suffolk County, denied the father's objections to the Hearing Examiner's order.

The father appealed from the August 27, 1991, order and that appeal was transferred to the Appellate Division, Fourth Department. On September 2, 1992, while the appeal was pending, the mother moved for an order to hold the father in contempt for his failure to pay support pursuant to the order. The father, by cross petition dated September 15, 1992, sought a downward modification of support. The matter was heard by a different Hearing Examiner than the one who issued the February 28, 1991, order, who concluded that the father failed to comply with the support order, that his noncompliance was willful, and that his testimony as to his finances was incredible. At that point, the arrears totalled over $46,000. In May 1993, the Family Court confirmed the Hearing Examiner's finding that the father's failure to comply with the prior order was willful, found him in contempt, and sentenced him to 48 days in jail unless he purged his contempt by paying $24,000 towards the arrears. The father served the period of incarceration and was released in July 1993.

In December 1993, while the appeal at bar was pending, the Fourth Department modified the August 27, 1991, order by reducing the father's child support for Daniel to $62.50 a week, on the ground that the mother failed to establish an unforeseen or unreasonable change of circumstances or that the child's needs were not being met (see, Matter of Bickwid v Deutsch, 199 AD2d 1087).

A reversal of the May 28, 1993, order finding the father in contempt is not required even though the order upon which the finding was based was subsequently modified. Since the father failed to obtain a stay of the August 27, 1991, order pending the appeal, he was required to obey it until it was vacated or reversed. An order of the court must be obeyed even

if erroneously made, so long as the court had jurisdiction, and the order was not void on its face (*see, Wolstencroft v Sassower,* 212 AD2d 598; *Busters Cleaning Corp. v Frati,* 203 AD2d 409; *see also, Matter of Brostoff v Berkman,* 79 NY2d 938, *cert denied* 506 US 861; *Matter of Balter v Regan,* 63 NY2d 630, *cert denied* 469 US 934). Moreover, since the decision of the Appellate Division, Fourth Department was not based on the father's financial circumstances, it is not determinative of the father's claim in the appeal at bar that he was financially unable to comply with the August 27, 1991, order.

The father contends that the contempt proceeding should have been dismissed because he was not provided with the required statutory warnings (*see,* Judiciary Law § 756; Family Ct Act § 453 [b]). The father bases this claim on the mother's order to show cause dated September 2, 1992, which failed to include the statutory warnings. However, it is readily ascertainable from the court file that the mother's petition was dismissed on September 21, 1992, with leave to resubmit the petition. The mother then served a summons dated September 21, 1992, which contained the proper statutory warnings and was returnable on November 16, 1992. The father appeared in this proceeding and did not object to the alleged improper statutory warnings until March 1993. Inexplicably, the father continues to argue on appeal that this proceeding should be dismissed because the September 2, 1992, order to show cause did not contain the proper statutory warnings, even though the Hearing Examiner and the Family Court Judge rejected his claim because the summons dated September 21, 1992, containing the statutory warnings was served.

A finding of a willful violation of a support order must be established by clear and convincing evidence (*see, Bulow v Bulow,* 121 AD2d 423). A finding of willfulness requires proof of both the ability to pay support and the failure to do so (*see, Matter of Powers v Powers,* 86 NY2d 63, 68; *Matter of Nassau County Dept. of Social Servs. v Walker,* 95 AD2d 855; Family Ct Act § 455 [5]). Here the mother established *prima facie* evidence of a willful violation by demonstrating that the father failed to pay the support required by the August 27, 1991, order. The burden then shifted to the father to establish his defense that he was financially unable to comply with the order (*see, Matter of Powers v Powers, supra;* Family Ct Act § 454 [3] [a]; § 455 [5]). The father admitted that, after he received the August 27, 1991, order, he continued to make support payments of only $62.50 a week for Daniel, although the order required him to pay $300 a week. He maintained, however,

that he had no assets and that his income was insufficient to meet his support obligation.

The father had been a certified public accountant (hereinafter CPA) for 30 years and was self-employed as a forensic accountant in litigation, including matrimonial actions. He derived his business income from lawyers, accountants, speaking engagements, journal publications, and radio and television programs, and he also worked *per diem* as an arbitrator for the American Arbitration Association.

At the time of the hearing, the father lived in a house owned solely by his current wife. He testified that, pursuant to lease agreements with his wife, he was obligated to pay her $1,500 a month to rent office space in her home and $1,200 a month to rent a portion of her residence for the use of his sons. Since entering into these agreements in 1990 he owed her $29,200 for office rent and $33,600 for residential rent, and he had executed promissory notes to her for these debts.

The father presented documents regarding his finances, all of which he prepared himself. According to these documents, his 1991 individual adjusted gross income was about $14,000, and his 1992 individual adjusted gross income was about $24,000. He testified that he did not own any real property or a car, although one of the three cars in his household was available for his use. He had no other business interests, no savings account, and the funds in his pension plan were less than $200. Although the surplus funds from the foreclosure sale of the parties' former marital residence amounted to about $850,000, the father maintained that those funds were used to pay debts, and none of this money remained. The former marital residence was purchased at the foreclosure sale by the father's current wife, through a corporate entity which was subsequently dissolved and title was transferred to her individually.

We find no basis in this record to disturb the Family Court's conclusion that the father's testimony and evidence regarding his finances was suspect (*see, Matter of Porcelain v Porcelain,* 143 AD2d 834). Given the father's lengthy, and to all appearances successful, career as a CPA, his claim of a complete lack of assets, even a savings account, was hardly credible. The court was not required to accept at face value documents which obligated him to pay his current wife $2,700 a month in office and residential rent (over $32,000 a year), when he claimed he had not been able to earn over $38,000 a year in the past five years. While stubbornly maintaining that he could not afford to pay more than $62.50 a week in support for Daniel, the father paid over $5,000 for his son Craig's college expenses in

1991 and over $9,000 for such expenses in 1992. Under the circumstances, the finding of a willful violation of the August 27, 1991, support order was warranted.

The father's contention that he was denied a hearing on his cross petition for a downward modification of support is belied by the record. The cross petition, if granted, would only affect child support payments after September 15, 1992, the date of the cross petition. The Hearing Examiner indicated that he was aware of that cross petition but would proceed first with the hearing on the mother's violation petition. The father did not object to this procedure, and he made no further reference to his cross petition for a downward modification until after his incarceration, when he moved to restore the cross petition to the calendar. Contrary to the father's contention, the court's failure to consider his cross petition for downward modification during the contempt proceeding was not prejudicial, as the court had the authority to modify the support order if it determined that he was presently unable to pay (*see,* Family Ct Act § 455 [5]). In any event, the father's cross petition for downward modification is academic, as the decision and order of the Appellate Division, Fourth Department, restored his child support obligation to $62.50 a week and cancelled those arrears which had accumulated as a result of the August 27, 1991, order.

The issues raised by the father concerning the procedure by which the Family Court reviewed the findings of the Hearing Examiner and issued its determination finding him in contempt are unpreserved for appellate review, as they were not raised in the Family Court. We decline to exercise our interest of justice jurisdiction to review them.

We have reviewed the father's remaining contention and find it to be without merit. Balletta, J. P., O'Brien, Copertino and Pizzuto, JJ., concur.