■ In the Matter of KIMBERLY A. HAYES, Appellant, v JERRY HAYES, Respondent. [741 NYS2d 345] —Carpinello, J. Appeal from an order of the Family Court of Saratoga County (Hall, J.), entered July 19, 2000, which, inter alia, dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 4, to hold respondent in willful violation of a prior order of support.

The parties to this proceeding, the parents of two children now ages seven and nine, are not strangers to Family Court. The record reveals that petitioner has filed numerous child support violation petitions against respondent over the past several years, with some success, and that significant arrears have accumulated. As of the filing of the subject violation petition in November 1999, respondent was obligated to pay $90 per week in child support. There is no dispute that petitioner has not received any child support since September 1999. Significantly, no cross petition for a downward modification of support was filed by respondent in response to the violation petition, even though he had petitioned for this relief on three prior occasions. After trial, the Hearing Examiner concluded

that respondent did not willfully violate any prior order of child support and, sua sponte, reduced his child support obligation to the statutory minimum of $25 per month. Family Court denied petitioner's objections to this determination, prompting this appeal.

There is little doubt that petitioner met her initial burden of proving respondent's nonpayment of child support since September 1999, thus shifting the burden to him to offer competent evidence of his inability to pay (see, e.g., Matter of Powers v Powers, 86 NY2d 63, 69-70). Contrary to the findings of the Hearing Examiner, our review of the record reveals that respondent failed in this burden. Notably, at an initial appearance on the violation petition, respondent claimed, as he had in the past, that an August 1997 automobile accident had rendered him disabled. When asked at this time why child support payments had not been paid, respondent testified that his "insurance company dropped [him]" because he failed to "show up to a pain clinic." Indeed, the record reveals that respondent was receiving no fault benefits from Allstate Insurance Company, but that these benefits were discontinued in September 1999 because his physician refused to verify his continuing disability.[1] In response to petitioner's contention that respondent was not being truthful about his medical condition, the Hearing Examiner set the matter down for a trial and instructed respondent to "bring all the medical records you have with you, and any statements from doctors showing that you are going to need an operation, and what's gone on in the past in regard to your back condition, and what they expect will happen in the future."

At the ensuing March 16, 2000 trial, the Hearing Examiner specifically noted at its commencement that "[t]he matter was adjourned for today's date for trial with the understanding that * * * [r]espondent would provide medical records to show that he was disabled." After petitioner unequivocally established nonpayment of child support, only two "medical records" were proffered by respondent, namely, two prescription slips. The first was signed by a nurse practitioner stating, without explanation, that respondent is "unable to work because of chronic back pain—going to pain clinic presently." The second was for a prescribed course of treatment from a pain manage-

---

1. Thus, contrary to the finding of the Hearing Examiner, respondent was not receiving "workers' compensation" benefits; rather, he was receiving no-fault insurance benefits. Moreover, and also contrary to the finding of the Hearing Examiner, said benefits were *not* terminated because petitioner instigated a fraud investigation.

ment clinic.[2] When asked if "[t]his is all [he] brought * * * to show that [he] can't work," respondent replied, "Yes." Respondent was thereafter cross-examined about the alleged nature of his disability, during which he denied that he had, in fact, been working in various capacities since his accident, including milking cows on a family farm and selling farm implements. Suffice it to say, his trial testimony was evasive and he failed to sufficiently meet his burden of proving that he is financially unable to pay child support. Under these circumstances, a finding of a willful violation was warranted.

Finally, the Hearing Examiner also erred in sua sponte granting respondent a downward modification of child support. First, in the absence of a cross petition seeking such relief (compare, Bickwid v Deutsch, 229 AD2d 533, lv denied 89 NY2d 802 [cross petition for downward modification of child support filed in support violation proceeding]), the Hearing Examiner erred in modifying respondent's child support obligation (see, e.g., Matter of Onondaga County Dept. of Social Servs. [Madge M.] v James M., 251 AD2d 1081; Matter of Sheehan v Sheehan, 221 AD2d 897, 898, lv dismissed 88 NY2d 932). In any event, even assuming the requisite jurisdictional basis for such a decision in the absence of a petition seeking such relief, there was insufficient evidence of a change in circumstances to warrant a downward modification of child support.[3]

Cardona, P.J., Crew III, Spain and Rose, JJ., concur. Ordered that the order is reversed, on the law and the facts, without costs, petition granted and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision.

---

2. As noted by the Hearing Examiner, this document "has absolutely nothing to do with any claim that [he] can't work."

3. Three prior judicial decisions in the record concerning these parties reveal that respondent has a history of having disability benefits denied based on his failure to follow through on paperwork and recommended medical therapy, of making voluntary employment decisions to frustrate collection of child support and of failing to advise Family Court of his actual employment status. Indeed, in the 4½-year period preceding the instant application, it was found that respondent failed to provide persuasive proof of an inability to work, with notations that the "extent and duration of [his] physical limitations are suspect" and that he is able to perform farming duties.