Burns v Grandjean (2022 NY Slip Op 06577)

Burns v Grandjean

2022 NY Slip Op 06577

Decided on November 18, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 18, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, LINDLEY, CURRAN, AND WINSLOW, JJ.

636 CA 20-01367

[*1]MATTHEW A. BURNS, PLAINTIFF-RESPONDENT,
v
JENNIFER A. GRANDJEAN, DEFENDANT-APPELLANT. WALTER BURKARD, ESQ., ATTORNEY FOR THE CHILDREN, APPELLANT. (APPEAL NO. 1.) 

MICHAEL STEINBERG, ROCHESTER, FOR DEFENDANT-APPELLANT. 
WALTER BURKARD, MANLIUS, ATTORNEY FOR THE CHILDREN, APPELLANT PRO SE. 
 

 Appeals from an order of the Supreme Court, Monroe County (Richard A. Dollinger, A.J.), entered October 5, 2020. The order, inter alia, expanded plaintiff's visitation with the subject children. 
It is hereby ORDERED that said appeal from the twelfth through fifteenth ordering paragraphs is unanimously dismissed (see Loafin' Tree Rest. v Pardi [appeal No. 1], 162 AD2d 985, 985 [4th Dept 1990]), and the order is modified on the law by denying that part of plaintiff's February 14, 2020 amended order to show cause seeking to modify the amended judgment of divorce by increasing plaintiff's visitation, that part of plaintiff's March 16, 2020 order to show cause seeking to impose penalties to compel compliance with visitation, and that part of plaintiff's June 18, 2020 order to show cause seeking suspension of his child support obligation, and by vacating the second, third, fifth through tenth, and seventeenth through twenty-third ordering paragraphs, and as modified the order is affirmed without costs and the matter is remitted to Supreme Court, Monroe County, for further proceedings in accordance with the following memorandum: Defendant mother and plaintiff father share joint legal custody of their three children pursuant to a separation agreement (agreement) that was incorporated but not merged into an amended judgment of divorce (judgment). The agreement granted the mother primary physical residence of the children and the father one weekday visit per week and overnight visitation every other weekend. The agreement also allowed the father to seek modification of the visitation schedule if he moved closer to the mother's residence, "which the [c]ourt will determine in the children's best interests."
For a period of time following their divorce, the parties followed a more flexible visitation schedule to accommodate the children's extracurricular activities. After relocating slightly closer to the mother's home, however, the father became less agreeable to the children's requests for flexibility in the visitation schedule. When the children thereafter refused to attend visitation, the father moved by orders to show cause to, among other things, modify the parties' custody and visitation arrangement, hold the mother in contempt for failing to abide by the visitation schedule, and terminate his child support obligation based on the children's failure to attend visitation. In those applications, the father also sought an award of counsel fees and downward modification of his child support obligation. Before the original order to show cause was served on her, the mother petitioned in Family Court to reduce the father's visitation on the grounds that the children's wishes had changed and that the weekday visits were negatively impacting their school work and sports activities. Upon the father's request, the mother's [*2]petitions were transferred to Supreme Court, then denied in an interim order from which no appeal was taken.
At an early appearance, the court suggested imposing its "house rules" on the children and the mother until the children complied with visitation. Those rules barred the children from many activities, including leaving the mother's home except for school and church, using cell phones and other electronic devices, engaging in any extracurricular activities, and conversing with, socializing with, or visiting family and friends. Without holding a hearing, the court issued temporary orders that increased the father's visitation time, directed the mother to enforce that visitation, and imposed the house rules. The mother and the Attorney for the Children (AFC) subsequently requested that the court remove the house rules and hold a hearing to evaluate whether the rules and the visitation schedule were in the children's best interests.
In appeal No. 1, the mother and the AFC appeal from an order that, inter alia, granted in part the father's February 14, 2020 amended order to show cause and June 18, 2020 order to show cause by expanding the father's visitation, suspending his child support obligation, formally imposing the house rules, finding the mother in civil contempt for violating prior court orders, and directing the mother to, among other things, pay the father's counsel fees and the initial costs of reunification therapy in order to purge the contempt.
The mother thereafter moved for leave to reargue her opposition to the father's applications. In addition, the mother and the AFC again requested that the court remove the house rules and hold a best interests hearing. They alleged, among other things, that the father had removed the children's bedroom doors in his house, that he had removed all food from his house, and that the children had called the police during at least one of the visits because the father refused to feed them. The AFC made further requests for a Lincoln hearing as well as counseling to permit the children and the father to rebuild their relationship because the visits were causing mental, emotional, and educational harm to the children. The AFC also moved to, inter alia, suspend the father's visitation pending family therapy, and the father cross-moved to dismiss the AFC's motion and restrict her communication with the children. The father filed additional applications to have the mother held in contempt for further alleged violations of the house rules and also asked the court to force the children to "remain in their bedrooms all day every day except for meals" while at their mother's house if they continued to refuse visitation. In appeal No. 2, the mother and the AFC appeal from an order that, among other things, granted the father's October 23, 2020 cross motion seeking to dismiss the AFC's motion and prohibit the AFC from disclosing pleadings or other court documents to the children and from discussing the documents' contents with them and granted in part the mother's motion for leave to reargue and, upon reargument, adhered to two of the prior contempt determinations and the penalties previously imposed. In appeal No. 3, the mother appeals from an order that, inter alia, granted in part the father's January 13, 2021 motion seeking, among other things, appointment of a family reunification therapist, required the mother to pay the first $7,500 in reunification therapy costs, and continued the imposition of the house rules. In appeal No. 4, the mother and the AFC appeal from an order that, inter alia, denied the mother's motion for permission to sign a work permit for the parties' oldest child. In appeal No. 5, the mother and the AFC appeal and the father cross-appeals from an order that, following a hearing on the father's allegations of contempt, found the mother to be in civil contempt for violating the judgment and subsequent orders and penalized the mother for that contempt by, inter alia, sentencing her to six weekends in jail and directing her to pay, inter alia, the AFC's fees, the full costs of reunification therapy, and $20,000 for the father's counsel fees and costs for the contempt proceeding and other unspecified matters. The order also further modified the judgment by assigning the parents certain zones of interest and continued the imposition of the house rules. This Court stayed enforcement of the penalty portions of the order in appeal No. 5.
Initially, we note that the mother and the AFC have not raised any contentions with respect to the order in appeal No. 4, and we therefore dismiss their appeals from that order (see Matter of Dawley v Dawley [appeal No. 2], 144 AD3d 1501, 1502 [4th Dept 2016]). We further note that each of the remaining orders contains one decretal paragraph, followed by paragraphs with varying names that we deem to be ordering paragraphs, and our modifications are based on that nomenclature.
The mother and the AFC contend in appeal Nos. 1, 3, and 5 that the court erred in altering [*3]the terms of the parties' custody and visitation arrangement and in imposing its house rules without conducting a hearing to determine the children's best interests. We agree. We therefore modify the orders in appeal Nos. 1, 3, and 5 accordingly, and we reinstate the provisions of the agreement and remit the matter to Supreme Court for a hearing, including a Lincoln hearing, to determine whether modification of the parties' custody and visitation arrangement is the children's best interests.
Where there is "a dispute between divorced parents, the first concern of the court is and must be the welfare and the interests of the children" (Matter of Lincoln v Lincoln, 24 NY2d 270, 272 [1969]), and "[a]ny court in considering questions of child custody must make every effort to determine what is for the best interest of the child[ren], and what will best promote [their] welfare and happiness" (Eschbach v Eschbach, 56 NY2d 167, 171 [1982] [internal quotation marks omitted]). Consequently, visitation and "custody determinations should '[g]enerally' be made 'only after a full and plenary hearing and inquiry' " (S.L. v J.R., 27 NY3d 558, 563 [2016], quoting Obey v Degling, 37 NY2d 768, 770 [1975]), "[u]nless there is sufficient evidence before the court to enable it to undertake a comprehensive independent review of" the children's best interests (Matter of Balls v Doliver, 72 AD3d 1618, 1619 [4th Dept 2010] [internal quotation marks omitted]).
Here, the court erred in concluding that the agreement "was designed to allow the father more time if he moved closer" and thus that no best interests hearing was necessary. Where a stipulation of settlement that is incorporated but not merged into a judgment of divorce is clear and unambiguous, the intent of the parties must be gleaned from the language used therein (see Matter of Meccico v Meccico, 76 NY2d 822, 824 [1990], rearg denied 76 NY2d 889 [1990]; see also W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). Contrary to the court's interpretation, although the plain terms of the agreement (see Laveck v Laveck, 160 AD3d 1397, 1397 [4th Dept 2018]) identify a move by the father as a substantial change of circumstances that would permit the father to seek more time with the children, they also require the court to determine such a request "in the children's best interests." Absent an evidentiary hearing, however, the court here lacked "sufficient evidence . . . to enable it to undertake a comprehensive independent review of the [children]'s best interests" (Balls, 72 AD3d at 1619 [internal quotation marks omitted]; see Matter of Almasi v Bauer, 27 AD3d 1155, 1156 [4th Dept 2006]).
We similarly conclude that the court's determination following the contempt hearing to modify the custody arrangement by assigning the parents zones of interest that, inter alia, granted the father final decision-making authority "for all matters involving the [children's] sports, extracurriculars (including extracurriculars sponsored or associated with the children's school)[,] and employment" is not "supported by a sound and substantial basis in the record" (Matter of Delgado v Frias, 92 AD3d 1245, 1245 [4th Dept 2012]; cf. Matter of Andross v Aiello, 183 AD3d 1266, 1267 [4th Dept 2020]; see also Chamberlain v Chamberlain, 24 AD3d 589, 591-592 [2d Dept 2005]).
With respect to the imposition of the court's house rules on the mother and the children, even assuming, arguendo, that the court had the authority to impose such rules (cf. Ritchie v Ritchie, 184 AD3d 1113, 1115 [4th Dept 2020]), we conclude that the record fails to demonstrate that the imposition of the house rules in this case was in the children's best interests.
We agree with the mother and the AFC that the court erred in refusing the AFC's repeated requests for a Lincoln hearing and in otherwise declining to consider the children's views in determining visitation. One of the parties' children was a teenager throughout these proceedings, and another entered his teenage years while this matter was being litigated. Although " 'the express wishes of children are not controlling, they are entitled to great weight, particularly where[, as here,] their age and maturity . . . make[s] their input particularly meaningful' " (Matter of Minner v Minner, 56 AD3d 1198, 1199 [4th Dept 2008]; see also Matter of Townsend v Mims, 167 AD3d 1584, 1584 [4th Dept 2018], lv denied 32 NY3d 919 [2019]; Matter of Rohr v Young, 148 AD3d 1681, 1681 [4th Dept 2017]). The father contends that the mother's challenge to the court's refusal to hold a Lincoln hearing is not preserved because the AFC withdrew her request for a Lincoln hearing at the end of the contempt hearing. We reject that contention. Inasmuch as the mother joined in the requests for that hearing and did not withdraw her request, the issue is before us on her appeal (see Matter of Lorimer v Lorimer, 167 AD3d 1263, 1265 [3d Dept 2018], app dismissed and lv denied 33 NY3d 1040 [2019]). [*4]With respect to the merits, it is well settled that "[a] Lincoln hearing serves the vital purpose of allowing a court to ascertain a child's preference and concerns, as well as corroborating information obtained during the fact-finding hearing" (Matter of Patrick UU. v Frances VV., 200 AD3d 1156, 1160 [3d Dept 2021]). Under the circumstances presented here, we conclude that a Lincoln hearing would have "on the whole benefit[ted] the child[ren] by obtaining for the Judge significant pieces of information need[ed] to make the soundest possible decision" (Lincoln, 24 NY2d at 272; see Matter of Noble v Brown, 137 AD3d 1714, 1715 [4th Dept 2016]).
We agree with the mother and the AFC in appeal No. 2 that the court further erred in granting that part of the father's October 23, 2020 cross motion seeking to limit the AFC's interactions with her clients. It is an "AFC's obligation to 'consult with and advise the child[ren] to the extent of and in a manner consistent with [their] capacities' " (Matter of Jennifer VV. v Lawrence WW., 182 AD3d 652, 654 [3d Dept 2020]; see 22 NYCRR 7.2 [d] [1]; Silverman v Silverman, 186 AD3d 123, 125 [2d Dept 2020]; see e.g. Matter of McDermott v Bale, 94 AD3d 1542, 1543 [4th Dept 2012]; Matter of Vandusen v Riggs, 77 AD3d 1355, 1355 [4th Dept 2010]). The court also erred in granting that part of the cross motion seeking to dismiss the AFC's motion. The mother joined in the AFC's requests, and thus any issue regarding whether the AFC has standing to seek affirmative relief on behalf of the children is moot. We therefore modify the order in appeal No. 2 by denying the father's October 23, 2020 cross motion and reinstating the AFC's motion, and we further modify the orders in appeal Nos. 2 and 5 by vacating the restrictions placed on the AFC. Because neither Lincoln nor best interests hearings were held, we lack sufficient information to determine the issues raised in the AFC's motion, and we thus remit the matter to Supreme Court for determination thereof.
We also agree with the mother and the AFC in appeal No. 1 that the court erred in granting that part of the father's June 18, 2020 order to show cause seeking suspension of the father's child support obligation on the ground that the mother was frustrating the father's right to visitation, and we further modify the order in appeal No. 1 accordingly. Although "a custodial parent's deliberate frustration of visitation rights can, under appropriate circumstances, warrant the suspension of future child support payments" (Matter of Coleman v Murphy, 89 AD3d 1500, 1501 [4th Dept 2011] [internal quotation marks omitted]), we conclude that the father failed to establish that the mother deliberately frustrated his visitation rights to such an extent that suspension of his support obligation was warranted (see Matter of Maldonado v Cappetta, 195 AD3d 1562, 1563-1564 [4th Dept 2021], lv dismissed 37 NY3d 1104 [2021]; Matter of Saunders v Aiello, 59 AD3d 1090, 1092 [4th Dept 2009]). In light of our determination, that part of the father's March 16, 2020 order to show cause seeking to modify his child support obligation is no longer academic. This Court lacks sufficient financial information to determine whether modification of the father's child support obligation is warranted, however, and we therefore direct the court upon remittal to reconsider the modification request de novo, along with the mother's request for child support arrears.
The mother and the AFC contend in appeal Nos. 2 and 5 that the court erred in finding the mother in civil contempt. We agree in part. A finding of civil contempt must be supported by evidence that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect, that the order has been disobeyed, that the party to be held in contempt had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party, and that the right of a party to the litigation has been prejudiced (see El-Dehdan v El-Dehdan, 26 NY3d 19, 29 [2015]; Matter of Mundell v New York State Dept. of Transp., 185 AD3d 1470, 1472 [4th Dept 2020]). A movant seeking a contempt order bears the burden of establishing the foregoing elements by clear and convincing evidence (see El-Dehdan, 26 NY3d at 29; Belkhir v Amrane-Belkhir, 128 AD3d 1382, 1382 [4th Dept 2015]). "A motion to punish a party for civil contempt is addressed to the sound discretion of the [hearing] court" (Matter of Philie v Singer, 79 AD3d 1041, 1042 [2d Dept 2010] [internal quotation marks omitted]; see Fernandez v Fernandez, 278 AD2d 882, 882 [4th Dept 2000]).
With respect to appeal No. 5, we conclude that the court properly granted that part of the father's March 16, 2020 order to show cause seeking to hold the mother in contempt based on allegations that she declined to schedule visitation with the father on several occasions between January 3, 2020, and the end of February 2020. The court did not abuse its discretion in determining that the father met his burden of establishing by clear and convincing evidence that the mother violated the parts of the judgment that required her to permit the father to have [*5]visitation with the children on those dates (cf. Matter of Amrane v Belkhir, 141 AD3d 1074, 1076-1077 [4th Dept 2016]) and that her actions unjustifiably impaired the father's right to visit with the children. Thus, we conclude that the court properly determined that the mother violated a lawful and unequivocal mandate of the court that was in effect at the time of the filing of a petition and that her actions caused prejudice to the visitation rights of the father, who was a party (see Judiciary Law § 753 [A]; McCain v Dinkins, 84 NY2d 216, 226 [1994]). Contrary to the mother's contention, wilfulness is not a required element of civil contempt (see El-Dehdan, 26 NY3d at 33-34).
We reject the mother's contention that the remaining findings of contempt in appeal Nos. 2 and 5 must be vacated because they are based on violations of the house rules. "It is well settled that an appeal from a contempt order that is jurisdictionally valid does not bring up for review the prior order" (Matter of North Tonawanda First v City of N. Tonawanda, 94 AD3d 1537, 1538 [4th Dept 2012]). Thus the mother was bound to adhere to the orders imposing those rules "[however misguided and erroneous [they] may have been" (Matter of Balter v Regan, 63 NY2d 630, 631 [1984], cert denied 469 US 934 [1984]; see Matter of Bickwid v Deutsch, 229 AD2d 533, 534-535 [2d Dept 1996], lv denied 89 NY2d 802 [1996]).
Nevertheless, we conclude in appeal No. 5 that the court erred in granting those parts of the father's February 14, 2020 amended order to show cause and his March 16, 2020 order to show cause seeking to hold the mother in civil contempt based on allegations that she failed to permit the father to engage in visitation on January 2, 2020, in violation of the judgment and that she violated orders to show cause signed by the court by discussing a pending Family Court modification petition with the children after receiving an order prohibiting that conduct. With respect to each of those allegations, the father "failed to prove by clear and convincing evidence that [the judgment and order that were allegedly violated] constituted a clear and unequivocal mandate" (Matter of John U. v Sara U., 195 AD3d 1280, 1283 [3d Dept 2021]; see Rienzi v Rienzi, 23 AD3d 447, 448-449 [2d Dept 2005]; see generally El—Dehdan, 26 NY3d at 29), and he therefore failed to meet his burden regarding those allegations (see Belkhir, 128 AD3d at 1382; Rienzi, 23 AD3d at 449).
With respect to appeal Nos. 2 and 5, we conclude that the court further erred in granting those parts of the father's June 18, 2020 and August 31, 2020 orders to show cause and March 10, 2021 cross motion seeking to hold the mother in civil contempt for violating the temporary orders, the court's house rules, and the judgment of divorce by, among other things, allowing the children to use their electronic devices, driving the older child to work on several occasions, enrolling and continuing the children in a soccer program before they began visiting with the father, allowing the children's maternal grandmother to help tutor them during the pandemic, and allowing the children to be present during the mother's birthday celebration with her parents. "[P]rejudice to the rights of a party to the litigation must be demonstrated" in order to sustain a civil contempt (McCain, 84 NY2d at 226; see Judiciary Law § 753 [A]; El—Dehdan, 26 NY3d at 29; Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y., 70 NY2d 233, 239—240 [1987]), and the father failed to establish by clear and convincing evidence that he was harmed by those actions (cf. Matter of Moreno v Elliott, 155 AD3d 1561, 1562 [4th Dept 2017], lv dismissed in part and denied in part 30 NY3d 1098 [2018]). Also with respect to appeal Nos. 2 and 5, we conclude that the court erred in granting those parts of the father's March 16, 2020, June 18, 2020, and August 31, 2020 orders to show cause and March 10, 2021 cross motion seeking to have the mother held in contempt for violating the court's orders on those occasions on which the children refused to visit with the father (see Whitehead v Whitehead, 122 AD3d 921, 922 [2d Dept 2014]). We therefore further modify the orders in appeal Nos. 2 and 5 by denying the applications and cross motion in part and vacating those findings of contempt.
In subparagraph B (2) of the fourth ordering paragraph in the order at issue in appeal No. 2, the court adhered to its prior determination implicitly directing the parties to undergo family reunification therapy and directing the parties to mutually select a therapist, among other things. The only bases for those directives, however, were the findings of contempt adhered to in that order. Inasmuch as we are vacating those findings of contempt, those stated and implied directives must also be vacated, and we therefore further modify the order in appeal No. 2 by vacating the second sentence in paragraph (B) (2) of the fourth ordering paragraph thereof. For the same reason, in appeal No. 3, we vacate the first ordering paragraph, which adheres to and [*6]restates those directives. We express no opinion concerning whether the court upon remittal should order counseling, therapy, or any other measures that might assist this family to heal.
With respect to the sustained findings of contempt, we note that civil contempt exists to permit "the vindication of a private right of a party to litigation and any penalty imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with that right" (El-Dehdan, 26 NY3d at 34 [internal quotation marks omitted]). Thus, " '[a]ny penalty imposed [for civil contempt] is designed not to punish but, rather, to compensate the injured private party or to coerce compliance with the court's mandate or both' " (Mundell, 185 AD3d at 1472, quoting Department of Envtl. Protection of City of N.Y., 70 NY2d at 239). Here, the penalties imposed in the order in appeal No. 5 include six weekends in jail, payment of the AFC's expenses, payment of the full costs of reunification counseling—which we deem to have superseded the prior penalties imposed in the orders in appeal Nos. 2 and 3—and payment of counsel fees. We conclude that those penalties are punitive and excessive (see Evans v Evans, 242 AD2d 955, 955 [4th Dept 1997]). In addition, the award to the father of $20,000 for "attorney[']s fees and costs incurred to date, including the fees to bring this contempt application" (emphasis added) improperly includes additional legal work that was not " 'directly related to [the mother's] contemptuous conduct' " (Oxman v Oxman, 184 AD3d 404, 405 [1st Dept 2020]). Consequently, we vacate the penalties imposed by the court and, in the exercise of our discretion (see Evans, 242 AD2d at 955), substitute as a penalty for the sustained findings of contempt a total fine of $250 (see Vider v Vider, 85 AD3d 906, 908 [2d Dept 2011]) and counsel fees of $1,000. For the same reasons, we reject the father's contention on his cross appeal that the penalty for contempt should be increased. The father's further contention that the court erred in denying those parts of his March 10, 2021 cross motion seeking additional findings of contempt is " 'beyond our review' " inasmuch as the father did not appeal from the order denying the cross motion in that respect (Matter of Carroll v Chugg, 141 AD3d 1106, 1106 [4th Dept 2016]).
Entered: November 18, 2022
Ann Dillon Flynn
Clerk of the Court