**TGT, LLC v Avenues World Holdings, LLC**

2024 NY Slip Op 32409(U)

July 12, 2024

Supreme Court, New York County

Docket Number: Index No. 156744/2020

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

----------------------------------------------------------------------------------X

TGT, LLC,

                                    Plaintiff,

                        - v -

AVENUES WORLD HOLDINGS, LLC., AVENUES THE
WORLD SCHOOL, 95-97 HORATIO LLC., and TF
CORNERSTONE INC.,

                                    Defendants.

----------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 156744/2020 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 004 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 004) 107, 108, 109, 110, 111, 112, 114, 116, 117, 118, 119, 162, 166, 167, 168, 169, 170, 171, 172, 173, 174, 177, 178, 179, 180, 181, 190, 192

were read on this motion to/for                          CONTEMPT                          .

Upon the foregoing documents, it is

In a special proceeding commenced to compel compliance with post-judgment subpoenas, petitioner TGT, LLC (TGT) now moves, in motion sequence 004, for an order holding respondent Richard Meli (Richard) in contempt of the decision and order of this court (J. Carol Edmead), dated February 18, 2022 (2022 Decision), and awarding costs and reasonable attorney's fees.

Facts and Procedural History

The underlying facts were stated in the 2022 Decision, which resolved motion sequence 003 by: (1) denying Richard's motion to quash TGT's October 1, 2020 information subpoena and restraining notice (Subpoena) and for a protective order against TGT; and (2) granting TGT's cross-motion to compel Richard's compliance with the Subpoena and to amend the caption to name Richard as the sole respondent.

(NYSCEF Doc No. [NYSCEF] 99, 2022 Decision). The court, therefore, presumes the parties' familiarity with the facts and provides only the facts and the procedural history relevant to the instant motion. Defined terms not defined herein, shall have the same meaning as in the in the 2022 Decision.

The 2022 Decision ordered Richard to produce "documents and communications from January 1, 2015, to the present" (i*d.* at 12) that were responsive to 25 demands,[1] seeking information that fell into three broad categories: (1) "Joseph Meli's email and text communications with Kevin Law, an alleged partner in Joseph Meli's fraud schemes"; (2) "all financial documents and communications concerning entities owned or controlled by Advance Entertainment, Meli and/or a Meli entity," including, but not limited to, "information regarding investments, assets, income, sources of revenues, business deals and/or opportunities, and the entities' financial status or ability to pay the judgment"; and (3) "documentation concerning payments, gifts, distributions, and other transfers of assets made by Richard Meli to members of Joseph Meli's family." (*Id.* at 6).[2] In so deciding, the court found that "it strain[ed] credulity for Richard Meli to argue that he [did] not possess a single document that [was] potentially relevant to the enforcement of TGT's judgment against Joseph Meli and Advance." (*Id.* at 11). The court also rejected Richard's claim that "that the material sought in the subpoenas [were] shielded from production by a federal protective order issued by United States District Court Judge for the Southern District of New York Ronnie Abrams." The court explained that "the federal protective order clearly state[d] that it cover[ed] only

---

[1] The Subpoena contained 27 demands. The court struck Demands 3 and 19. (*See* NYSCEF 99, 2022 Decision at 13, 18.)
[2] "Meli" refers to Joseph Meli. (*Id.* at 12 n 8.)

**156744/2020 TGT, LLC vs. MELI, RICHARD**
**Motion No. 004**

**Page 2 of 20**

confidential material the US Attorney's Office provided to Joseph Meli and his counsel as part of his defense in the criminal matter" and "[did not] include references to any documents that Richard Meli or Joseph Meli maintain[ed] as personal or business records."  (*Id.* at 6 n 7, citing NYSCEF 62, Protective Order.)

Richard had 45 days to comply with the 2022 Decision.  (S*ee id.* at 22). According to TGT— "[e]ven with the benefit of excluding the time during which [a] motion to stay enforcement [of the Subpoena] was pending" in a related appeal, a motion that the Appellate Division, First Department denied on May 12, 2022— Richard's "production . . . was due, at the latest, on or before May 22, 2022."  (NYSCEF 109, Burton affirmation, ¶ 13; *see* NYSCEF 106, notice of entry of the decision and order of Appellate Division, First Department, dated May 12, 2022.)

By letter dated May 24, 2022, TGT notified Richard that his production was late, and that he was "now in defiance of the Court's Order and subject to contempt proceedings."  TGT gave Richard seven days to comply with the 2022 Decision and warned that it would "take all remedies available to it under the law, including seeking to hold Richard Meli in contempt."  (NYSCEF 167, May 24, 2022 letter.)

Richard does not deny the receipt of this letter, he merely points out that, at the time, another TGT lawyer was actively negotiating a possible judgment satisfaction agreement with his son, judgment debtor Joseph Meli, which would have resulted in "a total discontinuance of an obligations on [his] part to produce documents."  (NYSCEF 170, Richard aff in opposition to TGT's affirmation of deficiency [Richard aff], response

**156744/2020  TGT, LLC vs. MELI, RICHARD**                                      **Page 3 of 20**
**Motion No.  004**

3 of 20

[* 3]

to ¶ 10 [emphasis omitted].)[3]  Richard points to an email from a TGT attorney, dated July 19, 2022, inquiring as to the progress "in trying to get an Effective Agreement in place."  (NYESCEF 117, July 19, 2022 email.)  He claims that "it is impossible reconcile the statements of one of TGT's lawyers expressing a continuing interest in pursuing a settlement agreement that would [have] relieve[d] [him] of all document production obligations, with the letter of another TGT lawyer—two months earlier—claiming that [Richard's] non-production of documents was 'in defiance' of [his] legal obligations." (NYSCEF 170, Richard aff, response to ¶ 10.)

TGT acknowledges that it engaged in settlement discussion with Joseph and that, "[a]s part of the proposed settlement agreement, TGT agreed to permanently stay all judgment enforcement efforts with respect to [Richard], so long as Joseph Meli adhered to the agreed upon payment schedule."  (NYSCEF 109, Burton affirmation, ¶ 19.)  However, as "Joseph Meli . . . failed to comply with the payment schedule," this "extinguishe[d] TGT's promise to stay its enforcement efforts against [Richard]."  (*Id.*)

On June 23, 2022, Richard "produced selected account statements for only one AMEX credit card account from 2017 through mid-2018."  (NYSCEF 166, TGT's affirmation of deficiency, ¶ 38.)  TGT notes that "[t]hese statements conveniently did not cover any period of time post-Judgment or during the effectiveness of the Restraining Notice upon [Richard]."  (*Id.*)

---

[3] Richard's affidavit in response to TGT's affirmation of deficiency contains a background section that describes the events that led to this motion and a section that responds to the allegations in TGT's affirmation of deficiency.  Citation to the former will appear as "Richard aff, ¶ _."  Citation to the latter will appear as "Richard aff, response to ¶ _."

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 4 of 20**

[* 4]

On June 24, 2022, TGT moved to hold Richard in contempt and to compel compliance with the 2022 Decision. (See NYSCEF 107-112.) In response, Richard's attorney, Robert Piliero (Piliero), represented that "discovery consultants ha[d] been engaged . . . to assemble responsive documents" and that Richard was "reviewing . . . 20,000 pages of documents," which would be produced by the return date on the motion, July 29, 2022. (NYSCEF 116, Piliero affirmation, ¶ 4.)

On July 29, 2022, Richard produced the 20,000 pages, which, according to TGT, consisted of "disorganized and 'dismembered' documents (i.e., pages of a singular document were randomly spread throughout the production)." (NYSCEF 166, TGT's affirmation of deficiency, ¶ 12.) More importantly, TGT alleges that the production did not include: (1) any documents or communication concerning the trusts created for the benefit of Joseph's children and funded with Joseph's assets (including his interests in Tuatara Capital LLP, Jefferson AG Sustainable Holdings I LLC, Compound II LLC, Orkila Growth Fund I LP, BCN Properties & Community Ventures LLC and Rumble Fitness LLC) (see id., ¶¶ 16-32); (2) communications and documents involving the transfers of other judgment debtor assets (some, allegedly, directly into Richard's own bank account), including judgment debtors' interests in "companies called Piearcings and Pig Beach LLC" (id., ¶¶ 33-34); (3) "any documents or communications concerning judgment debtor Advance Entertainment, despite the fact that [Richard] holds or previous held sole ownership and control of that entity" (id., ¶ 36); and (4) Richard's AMEX card and bank statements. (Id., ¶¶ 38-42.) TGT also points out that Richard's production did not include documents and communications: (1) "[i]n the form of text messages or other electronic messaging services"; (2) "[c]omprising emails or text

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 5 of 20**

5 of 20

messages between Joseph Meli and Kevin Law," despite "the fact that counsel for [Richard] transferred files received from Kasowitz Benson LLP (former counsel to judgment debtor Joseph Meli) which contained the complete hard drive culled of Joseph Meli's email and iPhone download collected after his arrest in early 2017"; (3) concerning "the profits, revenues, distributions or any other financial benefit received by him from Judgment Debtors or a Joseph Meli entity related to ticket deals"; (4) "[r]eceived from investors in any deal involving Judgment Debtors or a Joseph Meli entity"; and (5) "[r]elated to TF Cornerstone or James Siniscalchi." (*Id.*, ¶ 44).

Richard admits that he is the trustee for two irrevocable trusts set up by him and Joseph for the benefit of Joseph's children. (*See* NYSCEF 170, Richard aff, ¶¶ 18, 19.) The first, the J4 Trust, was established on June 22, 2020. (*Id.*) The second, the 4JS Trust (together with the J4 Trust, the Trusts), was created in March 2021. (*Id.*) The 4JS Trust purportedly had additional features that the J4 Trust lacked "and the assets in the J4 Trust were decanted to the 4JS Trust." (*Id.*, ¶ 20.) Richard admits he funded these trusts with Joseph's assets that "the federal authorities chose not to confiscate," including:

> "(a) . . . a publicly traded company called Chicken Soup for the Soul Entertainment; (b) ownership units in Stadium Goods, a 'streetwear' company, selling high-value sneakers and accessories; (c) ownership in Compound Fund II (formerly Metamorphic Fund), a tech start-up incubator; and (d) an interest in Tuatara Capital, a cannabis investment fund." (*Id.*, ¶ 16).

According to Richard, he "took steps necessary to sell the publicly traded shares, and to have the illiquid assets granted to . . . the J4 Trust and subsequently the 4JS Trust"

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 6 of 20**

6 of 20

[* 6]

(*id.*). However, Richard denies any wrongdoing in withholding documents and communications related to the Trusts.

First, Richard states that he ensured that these transfers did not violate the federal forfeiture and restitution orders against Joseph. To that end, he engaged Hecht Partner LLP (Hecht). (*Id.*, ¶ 17.) Hecht provided him "with individual letters covering transactions involving Stadium Goods, Compound II Fund, Tuatara Capital, Piearcing, and the other assets transferred to the J4 and 4JS Trusts. The legal opinion letters, unfortunately, did not address the issue of voidable transfers." (*Id.*)

Second, he alleges that he was unaware of TGT's default judgment against Joseph and Advance Entertainment until he received the Subpoena in early October 2020. (*Id.*, ¶ 12.) Upon receiving the Subpoena, Richard states that he consulted an attorney, Howard Leader. (*Id.*, ¶ 13.) Leader allegedly advised him that the language of the restraining notice did not cover trust assets. (*Id.*, ¶ 14.) In his affirmation, Leader states that he informed Richard that the notice "restrained the use of assets within [Richard's] 'possession or custody,'" whereas the "[t]rust funds were in fact beneficially owned by his grandchildren, and were in the 'possession,' and 'custody' of the custodian bank." (NYSCEF 171, Leader affirmation, ¶ 3.) Leader allegedly advised Richard that, while Richard might have been said "to have 'control' over the Trust money, the restraining notice [did] not purport to impose any restraint on funds over which he ha[d] 'control.'" (*Id.*)

Finally, Richard states that, while he wished to "fully complying with the Subpoena and Justice Edmead's Order," he was "unsure whether the requests for documents relating to any 'Meli Entity' include Trust-related documents." (NYSCEF

**156744/2020  TGT, LLC vs. MELI, RICHARD**
Motion No.  004

**Page 7 of 20**

7 of 20

170, Richard aff, ¶ 21). He allegedly consulted with an attorney who specializes in trust law, Elizabeth Morgan, who advised him that "requests asking for documents relating to any 'Meli Entity' would not extend to documents relating to the irrevocable Trusts that had been set up for [his] grandsons," because, "under the law of most states, including New York, a trust is not considered to be an 'entity,' but rather is a fiduciary 'relationship.'" (*Id.*, ¶ 22.) She also allegedly advised Richard that the "Subpoena was written with no contemplation of a trust structure because, . . . if it had contemplated a trust, it could clearly have so specified." (*Id.*, ¶ 23.) Richard claims that, "[i]n not producing trust documents in response to TGT's Subpoena, [he] relied on Ms. Morgan's legal advice, while also taking into consideration [his] legal and fiduciary obligations of confidentiality as Trustee." (*Id.*, ¶ 23.)

As concerns the nonproduction of documents and communications regarding companies called Piearcings and Pig Beach LLC, Richard responds that "Piearcings was . . . another asset granted to the J4 Trust long before either Joseph Meli or [Richard] were made aware of the TGT default judgment." (*Id.*) Richard states that he "ha[s] no recollection of any company called Pig Beach LLC" and "ha[s] no information on any such company." (*Id.*) He also denies that he ever had Piearcings, or "any of the Trust assets, transferred to [his] own bank accounts." (*Id.*, response to ¶¶ 33-35.)

Richard claims that "[his] tenure as Manager of Advance Entertainment was for the sole and single purpose of liquidating the Chicken Soup shares, which was accomplished before [he] learned about the default judgment in TGT's favor." (*Id.*) He maintains that this was his only involvement with Advance Entertainment and that he "[has] produced all documents related thereto." (*Id.*, response to ¶¶ 36-37.)

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 8 of 20**

8 of 20

[* 8]

Richard admits that he omitted AMEX card statements from his production. (See NYSCEF 170, Richard aff, response to ¶¶ 38-40.) TGT contends that such statements were responsive to the Subpoena and points to evidence that "assets transferred into the 4JS account were used to pay Meli family expenses via payment of Richard Meli's AMEX card." (NYSCEF 166, TGT's affirmation of deficiency, ¶ 40, citing index No. 153682/2023, NYSCEF 6 [4JS Trust bank account statements, reflecting payments to AMEX]).[4] Richard admits that he permitted the "use [his] American Express credit card for [Meli] family expenditures." (Id.) However, he argues that, because the "payment of Meli family living expenses is an authorized use of 4JS Trust assets, [he does not] see that whether or not [his] American Express card may or may not have been used as a conduit for such a payment, makes any difference." (Id.) He states that the AMEX statements were "documents pertaining to Trust related transactions" and, as such, "were not required to be produced." (NYSCEF 170, Richard aff, response to ¶¶ 38-40.)

In response to TGT's final allegations of noncompliance with the 2022 Decision, Richard states that he: (1) "[does not] have any relevant text messages"; (2) "[does not] have anything regarding Kevin Law" and does not "have the Kasowitz hard drives" or any knowledge of their current location, explaining that he had them "for a day or two," "some years ago . . . and turned them over to an attorney named Cesar de Castro, who was [Joseph's] court appointed defense lawyer at the time"; (3) "had no involvement in ticket deals and know[s] nothing about them"; (4) has no communications or documents from investors in any deal involving the judgment debtors or a Meli Entity, "to [his]

_____

[4] TGT cites to index No. 153682/2023, NYSCEF 5, which contains bank statements for the J4 Trust. The referenced 4JS Trust account statements are part of NYSCEF 6, under the same index number.

**156744/2020 TGT, LLC vs. MELI, RICHARD**
**Motion No. 004**

**Page 9 of 20**

[* 9]

knowledge"; and (5) has provided all documents related to TF Cornerstone or James Siniscalchi, which were limited to "documents representing the proceeds from the sales of the Chicken Soup shares, most of which [he] used to enable Jessica Meli to pay TF Cornerstone." (*Id.*, response to ¶ 44).

During oral argument on the motion, the court informed Richard's attorney that it was not impressed with respondent's "surgical," 20,000-page response to a Justice Edmead's thorough, 23-page decision. (S*ee* NYSCEF 190, tr at 26:2-10). As the court "believe[d] that this order from Justice Edmead was not complied with," it "order[ed] the imaging of phones, laptops, desktops, any computer equipment which includes phones of Richard Meli." (*Id.* at 23:10-16.) At a later argument on the motion, the court directed the parties to work together to ensure that all of Richard's AMEX and Chase statements were also sent to the imager, at which point Richard's attorney could work with the imager to redact those statements. (*Id.*) Richard was directed to sign the necessary consents and send them to AMEX and Chase by June 16, 2023. (*See* NYSCEF 184, June 14, 2023 tr at 11:7-15:15; 16:24-17:15.) The court also advised Richard's attorney that it found the argument, that trusts were not contemplated by the 2022 Decision/Subpoena, unconvincing. (S*ee id.* at 41:15-42:17) and to "anticipate a decision that you're not going to like." (*Id.* at 67:15-16.)

After motion sequence 004 was fully submitted, TGT came into possession of additional evidence of Richard's noncompliance. Specifically, in response to a judgment enforcement subpoena served upon Hecht in a parallel turnover proceeding (under index No. 153682/2023), Hecht provided: (1) an affirmation of one of its partners, indicating that Richard is in possession of a disclosure statement (Disclosure

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 10 of 20**

10 of 20

[* 10]

Statement) that lists Joseph's assets; and (2) a privilege log (Hecht Privilege Log), which reveals that Richard sent the Disclosure Statement to Hecht on November 20, 2020, approximately seven weeks after receiving the Subpoena, and "contains unprivileged communications between Richard Meli and other attorneys besides Hecht related to Judgment Debtor Joseph Meli's assets." (NYSCEF 195, Burton affirmation in support of motion seq 006, ¶¶ 9, 14, 16; see NYSCEF 196, Hecht partner's affirmation, ¶¶ 7-8; NYSCEF 197, Hecht Privilege Log, Entry No. 134.) Accordingly, TGT moved to supplement the record. (Motion seq 006.) This court granted the motion, by decision and order dated April 12, 2024. (NYSCEF 203.)

Discussion

TGT contends that ample evidence demonstrates that Richard has failed to comply with 2022 Decision and that, as a result, TGT's rights to enforce its judgment through subpoenas has been impeded, impaired, prejudiced and defeated. Richard responds that he made a good faith effort to comply with the 2022 Decision. He argues that, in not producing documents and communications relating to the Trusts, he relied on the advice of counsel that such were not called for by the language of the 2022 Decision/Subpoena. As concerns all other allegations of noncompliance, he claims to have provided everything in his possession. In response to TGT's newest evidence of noncompliance, the Disclosure Statement and the Hecht Privilege Log, Richard contends that "production was either prohibited by a previously issued Federal Court Order . . . or by application of the attorney-client privilege." (NYSCEF 199, Richard aff in opposition to motion seq 006, ¶ 2.)

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 11 of 20**

[* 11]

CPLR 5251 provides contempt as a remedy for disobedience of "a subpoena or restraining notice issued, or order granted, pursuant to [Article 52]" (CPLR 5251), whereas Judiciary Law § 753 supplies "the procedure for the contempt punishment." (*Matter of Wimbledon Fin. Master Fund, Ltd. v Bergstein*, 173 AD3d 401, 402 [1st Dept 2019] [internal citation omitted].) To establish civil contempt, petitioner must demonstrate, by clear and convincing evidence, that: (1) a lawful court order clearly expressing an unequivocal mandate was in effect; (2) the order has been disobeyed; (3) the party to be held in contempt had actual knowledge of the order; and (4) disobedience of the court's order has prejudiced a right of a party. (*El-Dehdan v El-Dehdan*, 26 NY3d 19, 29 [2015].) "[W]ilfulness is not an element of civil contempt. . . . [C]ontempt is established, regardless of the contemnor's motive, when disobedience of the court's order defeats, impairs, impedes, or prejudices the rights or remedies of a party." (*Id.* at 35 [internal quotation marks and citation omitted].)

Here, TGT demonstrates, by clear and convincing evidence, that Richard did not comply with the 2022 Decision, a lawful court order clearly expressing an unequivocal mandate of which Richard was aware, and that this impeded and prejudiced TGT's judgment enforcement efforts.

Even without examining every alleged deficiency of the July 29, 2022 production, the evidence of Richard's noncompliance is abundant. Richard readily admits that he did not produce any documents or communications in any way connected with the Trusts. (*See* NYSCEF 170, Richard aff, ¶ 23.) Contrary to the opinion of Richard's attorneys, such documents and communications should have been produced pursuant the 2022 Decision. Considering the broad, all-encompassing language of 2022

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 12 of 20**

Decision, the claim that Trust documents were not called for, because a trust is a fiduciary relationship and, as such, is not a "Meli Entity" (see id, ¶ 22), is a flimsy excuse for noncompliance. In other words, the court rejects Richard's argument that the 2022 Decision "was written with no contemplation of a trust structure" (NYSCEF 170, ¶ 23), when the Decision is intended to capture all financial arrangements, regardless of form.

For example, Justice Edmead ordered Richard to produce:

> "any and all documents concerning or reflecting payments, distributions, revenues, or wire transfers to Jessica Meli, Anna Meli, Jackson Meli, Julian Meli, Jude Meli, Joah Meli and/or any other Meli family member [by] Richard Meli . . .
>
> "any and all documents concerning or reflecting any source of income or revenues or any type of financial benefit from Meli and/or any Meli entity given to Richard Meli or held by Jessica Meli, Anna Meli, Jackson Meli, Julian Meli, Jude Meli, Joah Meli and/or any other Meli family member . . .
>
> "any and all documents concerning any financial, business or investment interest owned or *controlled* by Richard Meli, Jessica Meli, Anna Meli, Jackson Meli, Julian Meli, Jude Meli, Joah Meli and/or any other Meli family member" (NYSCEF 99, 2022 Decision, Demands 9, 10, 11 [emphasis added]).

Under the plain language of these demands, documents concerning trusts that were created for the benefit of Joesph's children, funded with Joseph's assets, and controlled by Richard, as well as records of Richard's payments, in his capacity as trustee, to Meli family members, should have been produced. The decision to withhold trust documents is inexplicable in light of Richard's acknowledgment that, as trustee, he *controlled* the trust assets. (See NYSCEF 171, Leader affirmation, ¶ 3 [explaining that the restraining notice did not apply to trust assets, as those assets were under Richard's "control" rather than in his "possession or custody"]; *see also* NYSCEF 184, June 14, 2023 tr at

**156744/2020   TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 13 of 20**

13 of 20

[* 13]

38:18-23 [Piliero explaining that, while Richard "had control" over trust assets, he "didn't have custody"].)

Even accepting Richard's excuse, that "[he] was advised by counsel . . . that production of documents relating to assets owned by the Trust was not required under the [2022 Decision]" (NYSCEF 170, Richard aff, response to ¶ 16), this does not explain his failure to produce the agreements forming the Trusts. The agreements were between Joseph, as grantor, and Richard, as trustee, and assigned to the trusts Joseph's interest in various assets. (S*ee* index No. 153682/2023, NYSCEF 5 [the J4 Trust Agreement, executed on June 22, 2020]; index No. 153682/2023, NYSCEF 6 [the 4JS Trust Agreement, executed on February 23, 2021].) The 2022 Decision unequivocally requires their production under the demand for "any and all agreements, or drafts thereof, between Richard Meli and Advance Entertainment, Meli, and/or a Meli Entity." (NYSCEF 99, 2022 Decision, Demand 21.)

In any event, Richard does not provide any legal authority for the proposition that he may escape being held in contempt by demonstrating reliance on the advice of counsel. This may be because "there is no rule or practice which absolutely protects a party in a contempt proceeding from an untenable position taken under advice of counsel." (*Matter of Howard*, 201 App Div 123, 124 [1st Dept 1922].) Nor is the court inclined to exercise its discretion to relieve respondent of responsibility, as the effect of counsel's mistake is not jail time for Richard and, moreover, as will be discussed in more detail, his noncompliance is calculated. (S*ee contra id.* at 125-126 [finding that "substantial justice and a wise exercise of the discretion vested in the court require[d] [it]

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 14 of 20**

14 of 20

to relieve the client, where the effect of the counsel's mistake may [have] be[en] to keep her in jail indefinitely by reason of her inability to comply with the order"].)

The willfulness of Richard's noncompliance is on display when he criticizes TGT for failing to offer "any factual basis for its assumption that [his] son Joseph and/or Advance had or have any interest in [the Orkila Growth Fund I LP, BCN Properties & Community Ventures LLC, and Rumble Fitness LLC] investments held by the Trust." (NYSCEF 170, Richard aff, ¶ 32.) As Richard is in the position to know the provenance of these investments, he should be the one to determine whether documents concerning them should be produced pursuant to the 2022 Decision. His continued refusal to do so in a forthright manner is why he is currently facing a finding of contempt. Moreover, TGT submits copies of Richard's communications with BCN Properties & Community Ventures LLC, "regarding Joe's investment in BCN" (NYSCEF 168 at 27), as well as a copy the J4 Trust Agreement, in which Joseph assigns to the trust his ownership interest in Stadium Enterprises LLC, Tuatara Capital Fund I, LP, Compound II, LP, Orkila Growth Fund I, LP, BCN Properties & Community Ventures LLC, and Rumble Fitness LLC. (Index No. 153682/2023, NYSCEF 5.)

Many of Richard's justifications for failing to produce documents demonstrate a deliberate ignorance of the plain language of the 2022 Decision. He repeatedly emphasizes that: (1) the assets used to fund the Trusts came from Joseph's investments that predated, and were unrelated to, the fraudulent scheme that led to Joseph's convictions and TGT's judgment; and (2) various transfers occurred before he was served with the Subpoena, at a time when he and Joseph were allegedly unaware of TGT's judgment. (See NYSCEF 170, Richard aff, ¶¶ 19, 25-31.) However, nothing in

156744/2020  TGT, LLC vs. MELI, RICHARD
Motion No. 004

Page 15 of 20

the 2022 Decision limits Richard's production obligations in relation to these facts. By Richard's own admission, he used Joseph's assets to fund the Trusts and all the necessary steps were taken after January 1, 2015. (S*ee id.*) Therefore, documents and communications related to the funding of the Trusts should have been produced under the plain language of the 2022 Decision. (*See* NYSCEF 99, 2022 Decision.)

Finally, Richard's response to TGT's discovery of the Disclosure Statement and the Hecht Privilege Log demonstrates the brazenness of his noncompliance.

Richard claims that "[he] excluded production of the Disclosure Statement because [he] believed it to be covered by the SDNY Protective Order. " (NYSCEF 199, Richard aff in opposition to motion seq 006, ¶ 4.) However, the 2022 Decision explicitly rejects this argument, explaining that "the federal protective order clearly states that it covers only confidential material the US Attorney's Office provided to Joseph Meli and his counsel as part of his defense in the criminal matter." (NYSCEF 99, 2022 Decision at 6 n 7, citing NYSCEF 62, Protective Order.) The Disclosure Statement was not provided to Joseph by federal prosecutors, rather, it was "shared with law enforcement." (NYSCEF 196, Hecht partner's affirmation, ¶ 7.) Moreover, the version of the Disclosure Statement in Hecht's possession "is materially different from the one that was apparently shared with law enforcement" (*id.*, ¶ 8) and "appears to have been created . . . for the purposes of obtaining legal advice." (*Id.,* ¶9.) As such, Richard's assertion of a previously rejected argument, to justify the nonproduction of a document that purportedly lists Joseph's assets, is nothing short of outrageous.

Richard also claims that Hecht documents and communications, discussing the transfer of Joseph's assets to the Trusts, are protected from disclosure by attorney-

**156744/2020  TGT, LLC vs. MELI, RICHARD**
Motion No.  004

**Page 16 of 20**

16 of 20

client privilege. (NYSCEF 199, Richard aff in opposition to motion seq 006, ¶ 5.) However, Richard never provided a privilege log, as required when one "withholds one or more documents that appear to be within the category of the documents required by the notice, subpoena duces tecum or order to be produced." (CPLR 3122 [b].)[5] Instead, he opted to conceal the existence of such responsive documents. In short, Richard fails to offer any reasonable explanation for his noncompliance.

As TGT demonstrates, by clear and convincing evidence, that Richard disobeyed the 2022 Decision and that this has impeded, impaired, prejudiced and defeated TGT's right to enforce its judgment through subpoenas, TGT's motion to hold Richard in contempt is granted. (See *El-Dehdan*, 26 NY3d at 29.) Notably, the bank statements for the Trusts demonstrate that, during the time TGT sought compliance with the Subpoena, trust assets were steadily depleted. Account statements for the J4 Trust show that, a month after Richard was served with the Subpoena, the trust had approximately $3,000,000. (See index No. 153682/2023, NYSCEF 5.) Account statements for the 4JS Trust reveal that, around the time of the 2022 Decision, the trust had approximately $350,000. By October 2022, there was less than $500 in the account. (*See* index No. 153682/2023, NYSCEF 6.) Clearly, TGT has been impeded in collecting information about the whereabouts of funds to satisfy its judgment and impaired because funds were dissipated while it was searching and waiting for Richard's compliance.

---

[5] Before asserting privilege, the court cautions Richard to consult its recent decision in a related proceeding, rejecting Hechts' assertion of the attorney-client privilege and the common interest exception. (*See* index No. 153682-2023, NYSCEF 175.)

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No. 004**

**Page 17 of 20**

The court admonishes Richard to promptly and fully comply with his production obligations under the 2022 Decision. He has had a year to prepare for this outcome. (S*ee* NYSCEF 184, June 14, 2023 tr at 67:15-16 [advising Piliero to "anticipate a decision that you're not going to like"].)

Further delay will not be tolerated and will result in an order granting TGT access to Richard's imaged devices.[6]

"If an actual loss or injury has been caused to a party to an action or special proceeding, by reason of the misconduct proved against the offender, and the case is not one where it is specially prescribed by law, that an action may be maintained to recover damages for the loss or injury, a fine, sufficient to indemnify the aggrieved party, <u>must be imposed upon the offender</u>, and collected, and paid over to the aggrieved party, under the direction of the court." (Judiciary Law § 773.) "Unlike criminal contempt sanctions which are intended to punish, civil contempt fines are intended to compensate victims for their actual losses" (*Matter of Barclays Bank v Hughes*, 306 AD2d 406, 407 [2d Dept 2003].) Civil contempt fines are mandatory when proven. (*Nickolopulos v Janoff*, 268 AD 829 [2d Dept 1944].) "Penalties for civil contempt should be assessed with an eye towards their 'remedial nature and effect.'" (*People v L.G.*, 208 NYS3d 469, 478 [Sup Ct, NY County 2024].) The penalty for each contempt is to be considered separately. (*Jos. Riedel Glass Works v Francis W. Kurtz & Co.*, 260 AD 163 [1st Dept 1940], *order affd, appeal dismissed,* 287 NY 636 [1941].) TGT has offered incontestable evidence of actual loss and thus is entitled to be

---

[6] Richard shall provide TGT with information as to the circumstances of the imaging of his electronic equipment, who, what, when and how, who has the disk with the images and the size of the image files.

**156744/2020   TGT, LLC vs. MELI, RICHARD**                              **Page 18 of 20**
**Motion No.  004**

compensated by Richard for $349,500 ($350,000-$500), the amount that was in the bank account of the 4JS trust which was dissipated while Richard was refusing to produce responsive documents. In addition, TGT is awarded reasonable costs and attorney's fees incurred by petitioner in making this motion. (*See* Judiciary Law § 753; *Matter of Wimbledon Fin. Master Fund, Ltd.*, 173 AD3d at 402 [finding that the motion court "appropriately limited the contempt sanction to petitioner's attorneys' fees"]).

Accordingly, it is

ORDERED that respondent Richard Meli is in contempt of this court's February 18, 2022 decision and order directing compliance with the judgment enforcement subpoena dated October 1, 2020; and it is further

ORDERED that Richard Meli shall fully comply with the decision and order dated February 18, 2022 within 10 days from service of a copy of this order with notice of entry. Otherwise, Richard Meli will be directed to turnover to TGT the images of all his electronics. Richard Meli has had more than enough time to take the steps necessary to protect any attorney client communications in those images; and it is further

ORDERED that within 10 days of a subsequent order of this court Richard Meli shall pay the reasonable costs and attorneys' fees incurred by petitioner in making this motion; and it is further

ORDERED that within 10 days of the date of this order, petitioner shall submit an affidavit of services, including resumes or firm bios of attorneys and staff involved in the case. Otherwise waived; and it is further

ORDERED that within 10 days of this order with notice of entry, Richard shall provide TGT with information as to whom imaged the electronic equipment, when, what

**156744/2020  TGT, LLC vs. MELI, RICHARD**
**Motion No. 004**

**Page 19 of 20**

19 of 20

[* 19]

devices, who has the disk(s)/thumb drive(s) or cloud access with the images, and the size of the images saved on the disk(s)/thumb drive(s) or cloud access; and it is further

ORDERED that within 10 days of this order, Richard shall pay TGT $349,500 to indemnify TGT for its actual loss incurred because of Richard's contempt.

| **7/12/2024** | | | | ANDREA MASLEY, J.S.C. | |
|---|---|---|---|---|---|
| **DATE** | | | | | |
| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | X | GRANTED | | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**156744/2020   TGT, LLC vs. MELI, RICHARD**
**Motion No.  004**

**Page 20 of 20**

[* 20]